21880
The STATE, Respondent, v. Arthur G. HESS, Appellant.
(301 S. E. (2d) 547)

· *J. Marvin Mullis, Jr.*, of *Law Offices of J. Marvin Mullis, Jr.*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod* and *Sr. Asst. Atty. Gen. Brian P. Gibbes*, Columbia, *Sol. Donald V. Myers*, Lexington, *for respondent.*

March 15, 1983.

Lewis, Chief Justice:

Appellant, the former Chief of the Columbia Police Department, was found guilty on two indictments charging misconduct in office. We affirm both convictions.

In October 1980, while serving as the Columbia Police Chief, appellant initiated a series of secret contacts with one Joel Hendrix. The record shows that Hendrix was reputed to be a key figure both in organized criminal activities and in past corruption scandals touching local law enforcement. At trial, appellant steadfastly contended that the purpose of these contacts was to lure Hendrix into acts of bribery by offering protection and information in return for periodic payments at a rate of $1,000.00 a month. Appellant maintained that he deliberately conducted this operation as a one-man affair out of fear that Hendrix' pervasive influence within the police department might result in a compromise of the plan.

A number of facts are not disputed in the lengthy record of this trial. On October 18, 1980, appellant did accept $1,000.00 in cash from Hendrix. On October 31, 1980, appellant did reveal to Hendrix certain police information that he as Chief of Police had received from a subordinate. On January 3, 1981, appellant again revealed to Hendrix information obtained through his office. On that date appellant also met with Hendrix to receive one of the payments described above. He was arrested at that time by agents of the State Law Enforcement Division (SLED) who, on Hendrix' information, had followed the case almost from the beginning and actually recorded most of the meetings.

The two indictments charge that on October 31, 1980, and again on January 3, 1981, appellant did "corruptly inform" Hendrix in the manner just described. While conceding all the facts recited above, appellant met the charge of misconduct by a presentation of testimony designed to show that his intentions were wholesome even though his methods were unorthodox. Likewise, appellant sought to cast doubt upon the State's case by close and penetrating cross-examination of prosecution witnesses, especially Hendrix. Thus, the key issue of fact for determination by the jury was the true intent or motive behind appellant's actions.

We believe that this crucial question of fact was ably contested by both sides and brought into focus by the definition of "corruption" given in the trial court's jury instruction: "Corruption is an act done with intent to gain advantage, not consistent with official duty and rights of others. Corrupt is defined to be dishonest, without integrity, guilty of dishonesty. . . ." Reviewing the record as a whole, we cannot conclude that a jury finding of corrupt intent would have been without evidentiary support beyond a reasonable doubt.

Appellant contends, however, that the trial was infected with numerous errors that determined its outcome. We note that most of his exceptions, and questions presented, arise from rulings which rest upon the sound discretion of the trial court. Appellant objected to the seating of a juror who had once worked for SLED and to the introduction of testimony concerning the meeting of October 19, 1980, in Calhoun County. We find no abuse of discretion in either instance and dismiss the issues as without merit.

Appellant urges that the jury was improperly allowed to take copies of tape transcripts into the juryroom. It is contended that possession of the tapes gave undue emphasis to the evidence. *State v. Gulledge*, S. C., 287 S. E. (2d) 488; *State v. Plyler*, 275 S. C. 291, 270 S. E. (2d) 126. We read the record otherwise. In this case there was no dispute as to the essential facts as summarized earlier. Appellant does not claim that the transcripts were inaccurate in reproducing the actual meeting between himself and Hendrix. The critical factual issue was appellant's intent and not the fact of his contacts with Hendrix. Thus the impact of any undue emphasis on the tapes and transcripts had little effect on appellant's defense. Any error under our cases was clearly harmless.

Appellant complains that on cross-examination the State improperly elicited from him the fact that one of his trial counsel had once represented an individual alleged to have operated a brothel which the Columbia police were seeking to close. Clearly that fact was irrelevant to the issue of appellant's guilt or innocence, but no timely objection was made to the question. The issue is not before us for review.

Appellant urges that reversible error occurred when the trial judge limited his cross-examination of Hendrix, the key witness for the State. A similar error is urged against the trial judge's limitation of witnesses whom appellant offered to demonstrate his competence, character and good reputation as a police officer. We find the rulings of the trial judge to have been soundly based on principles of relevancy and the inadmissibility of cumulative testimony. There was no abuse of discretion in these rulings.

We find, moreover, that no prejudice resulted to appellant by reason of these limitations. The record reveals that counsel for the appellant succeeded in winning acquittal under four other indictments which alleged bribery, extortion and two instances of obstruction of justice. The jury was given ample opportunity to weigh the credibility of Joel Hendrix.

With respect to appellant's other witnesses, we find no prejudice in the court's limiting character testimony as it did. It must be remembered that appellant confided in no one during the course of his single-handed operation against Hendrix. One simply cannot conceive of any direct

testimony by live witnesses which could shed additional light on the question of appellant's intent during the months at issue. At best, these witnesses could have testified that appellant was an honest man worried about corruption in the Columbia Police Department. That contention was more than once put to the jury in the record before us. The absence of further corroboration worked no prejudice.

Appellant objected to Exhibit 40 of the State which was a large display board upon which the events from October 1980, to January 1981, were represented for jury reference. Part of appellant's defense was his argument that the information divulged in October 1980, was actually stale. The testimony indeed bears him out on this point. For some reason, the State's exhibit confused the sequence of events, and from this appellant concludes that the jury may have decided that he in fact compromised an ongoing investigation.

Unfortunately, this mistake was not specifically brought to the trial court's attention. Appellant's general objection to admission of the display board contained a nebulous reference to "one or two inaccurate facts," but the specific inaccuracy complained of on appeal was never mentioned. The trial court was denied opportunity to rule on this complaint, and accordingly we deem the issue not preserved for our review.

We note, however, that there is very little likelihood of prejudice resulting from this exhibit. To bolster his own version of the October 31st disclosure, appellant submitted in evidence a calendar showing clearly that the information was stale and he so knew it to be well before his fateful disclosure to Hendrix. That calendar was marked as an exhibit, and the jury had the benefit of it in connection with evidence of the State.

In the final analysis, the relative value of the police information actually disclosed has little bearing upon the ultimate issue in this case, because we find appellant's actions to be official misconduct in any event.

Appellant correctly notes that South Carolina has no cases applying the common law of misconduct in office. Indeed this was the basis of the indictments rather than statutory offenses such as violations of Section 8-1-80, 1976 Code of Laws (general misconduct statute) or Code Section 8-13-440, (prohi-

bition on disclosure of confidential information for financial gain).

Appellant also directs this Court to a number of well considered decisions by the New Jersey Supreme Court which form a persuasive body of law on official misconduct. In good part we adopt the rationale of these leading cases.

Misconduct in office occurs when duties imposed by law have not been properly and faithfully discharged. *State v. Furey*, (N. J.), 128 N. J. Super. 12, 318 A. 2d 783; *State v. Begyn*, (N. J.), 34 N. J. 35, 167 A. 2d 161, 165, 168. The existence of a duty owed to the public is essential, for otherwise the offending behavior becomes merely the private misconduct of one who happens to be an official. *State v. Weleck*, (N. J.), 10 N. J. 355, 91 A. 2d 751, 756. The jury instruction of the trial court in this case satisfactorily stated the rule as follows: "Misconduct includes any act, any omission, in breach of duty of public concern by persons in public office provided it is done wilfully and dishonestly." (Again, it should be noted, the wilful and dishonest character of appellant's conduct was the threshold fact issue to be determined by the jury. Having found bad faith and corrupt intent, the jury could then proceed to determine whether or not the requisite elements of bribery, extortion, obstruction of justice and official misconduct had been proven under each of the separate indictments.)

New Jersey normally requires that a criminal indictment for official misconduct recite the duty that has been breached. *State v. Furey, supra; State v. Begyn, supra; State v. Cohen*, (N. J.), 56 N. J. Super. 509, 153 A. 2d 688; *State v. Winne*, (N. J.), 12 N. J. 152, 96 A. 2d 63; *State v. Weleck, supra.* The leading case of *Driscoll v. Burlington-Bristol Bridge Co.*, (N. J.), 8 N. J. 433, 86 A. 2d 201, however, suggests a duty of *accountability* "imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office." 86 A. 2d at 222. The Court in *Driscoll* states this common sense obligation as follows:

> Public officers must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly.

86 A. 2d at 221.

Whatever else may be said of appellant's actions, it is clear from this record that he provided no mechanism by which the public could openly, frankly or fairly judge him or his work. It is not enough, in fulfillment of his duty, to await a criminal indictment before making a record of one's true motives. We do not deny the need for confidentiality in police investigations but rather we hold that even officials operating in secrecy must be at the same time and in some manner accountable. Appellant so designed his operation against Hendrix that not even superior officials, whom he professed to trust, could monitor or vouch for his undertaking. A duty was owed, and the jury was entitled to conclude from the evidence that this duty was breached.

We note that the adequacy of the indictment is not attacked on this appeal. Instead appellant challenges the jury instruction of the trial court upon the narrow grounds that malfeasance, misfeasance and nonfeasance were charged together and further that the jury might have been led to convict upon a showing of mere negligence. The record decisively defeats the latter contention, for the trial court made it abundantly clear that dishonesty and corruption were required for any finding of criminal misconduct in office. The fact that three variants of misconduct were charged and also explained worked no prejudice, for the jury could have properly condemned appellant's actions under one or all of these headings. Divulging police information for payment without adequately recording the transaction for purposes of accountability could be deemed a wrongful act in itself, hence malfeasance. The same behavior might constitute a lawful investigatory device done in a wrongful manner, hence misfeasance. With equal logic, such action could be viewed as a substantial failure to perform the duty of good faith and accountability, from which conviction for nonfeasance would flow. Appellant's exception to the jury charge clearly is without merit.

All questions being determined adversely to appellant, the convictions and judgments are hereby affirmed.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.