**Ray DAUGHERTY, Appellant (Defendant Below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1–883A255.

Court of Appeals of Indiana, First District.

July 18, 1984.

Rehearing Denied Sept. 10, 1984.

Paul G. Roland, Ruckelshaus, Roland & O'Connor, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Ray Daugherty appeals his conviction of official misconduct, a class A misdemeanor, IND.CODE 35–44–1–2(1). Daugherty received a one year sentence with sixty days to be executed; he was fined $1000.00 and he was disenfranchised from holding public office for ten years. The misconduct was Daugherty's battery upon a prisoner in his custody while he was the Hendricks County sheriff.

Daugherty raises several issues for our review: 1) did the trial court err by refusing to dismiss the indictment because of a prosecutorial conflict of interests; 2) did the trial court err by denying a change of venue from the judge based upon the judge's partiality in favor of the original special prosecutor; 3) should the indictment have been dismissed because the circuit court made an untimely appointment of the jury commissioners; 4) was the second special prosecutor improperly appointed pursuant to IND.CODE 33–14–1–6; 5) whether the indictment should have been dismissed because battery is not an act that public servants are specifically forbidden to commit and therefore, Daugherty did not commit official misconduct; 6) whether the guilty verdict on the misconduct charge is irreconcilable with the jury's failure to return a verdict on the battery charge; 7)

whether the trial court erred by admitting the prejudicial testimony of two inmates, who were also involved in the incident underlying the charged offense, on the basis of "res gestae"; 8) that the trial court improperly disenfranchised him.

First, Daugherty argues he was denied due process because the prosecutor had a conflict of interest. Relying on *State Ex Rel Goldsmith v. Superior Court of Hancock County*, (1979) 270 Ind. 487, 386 N.E.2d 942 and *State v. Hardy*, (1980) Ind. App., 406 N.E.2d 313, Daugherty argues Prosecutor Coleman assumed inconsistent positions by participating in the grand jury proceedings after he had acknowledged a conflict of interest. The potential conflict of interest arose from the fact that two deputy prosecutors represented the sheriff in civil matters and one of these deputies also gave the sheriff legal advice pertaining to the charge involved in the case at bar.

The facts reveal that in June, 1979, Daugherty allegedly committed battery on three prisoners in his custody while attempting to discover who had made an obscene drawing of his wife on a jail table. Subsequently, one of the inmates, Webb, alleged at a court appearance that he had been beaten by Daugherty. The circuit court judge, Judge J.V. Boles, told the deputy prosecutor who was present, Terry Kessinger, to investigate Webb's allegations.

Kessinger recalled informing Daugherty about the allegations. He also spoke with Prosecutor Coleman about the inmate's claims. He did not recall investigating the charges at length. Kessinger did not give the sheriff legal advice and he did not participate in the grand jury proceedings which ultimately occurred some two years later.

After Prosecutor Coleman became aware of the inmate's claims, he wrote to the FBI office in Indianapolis requesting it to investigate the matter. In his letter dated July 27, 1979. Coleman explained that he was reluctant to "call a grand jury or otherwise

prosecute the case" because of political considerations and because a deputy prosecutor, Paul Hardin, represented the sheriff's department in civil matters. The resulting FBI investigation and federal grand jury proceedings ended with no charges being filed.

During the period when the inmates' allegations initially surfaced and when the FBI was beginning its investigation, Deputy Prosecutor Hardin met with the sheriff and his deputies to discuss the investigation. Hardin gave legal advice to the sheriff and his deputies.

On June 26, 1981, the Hendricks County grand jury indicted Daugherty on six counts; three counts of official misconduct and three counts of battery with one count from both groups applying to each of the three inmates. Coleman participated in the grand jury proceedings and presented evidence related to the batteries. According to Coleman, he did not specifically call a grand jury to investigate the alleged beatings but instead they resurfaced during an overall investigation of the sheriff's department.

After the indictments were returned, Prosecutor Coleman requested the appointment of a special prosecutor on grounds that he might not be able to exercise independent professional judgment, that Deputy Prosecutor Kessinger represented the sheriff's department in civil matters and that Canon 9 of the Code of Professional Responsibility admonishes lawyers to avoid even the appearance of impropriety. Judge Boles granted the petition and appointed Steven Oliver special prosecutor.

Daugherty filed his motion to dismiss and at the hearing on this motion, Hardin conceded he gave the sheriff legal advice, but he refused to answer specific questions on the grounds of attorney-client privilege.

As the state correctly points out, Daugherty's reliance on *Goldsmith* and *Hardy* is misplaced. Although both cases involved situations of potential prosecutorial conflict of interest, neither case was decided on the basis of due process considerations.

In *Hardy*, the trial court dismissed an indictment because of a defect in the grand jury proceedings, the presence of an unauthorized person. The unauthorized person was the Scott County prosecutor who had successfully sought the appointment of a special prosecutor because he foresaw a potential conflict of interest due to the possibility that he would be a witness. Despite the appointment of a special prosecutor, the prosecutor nevertheless actively participated in the grand jury proceedings. Relying on *Goldsmith*, this court affirmed the dismissal on the grounds that once a prosecutor recuses himself, the recusation applies to all aspects of the case. However, the issue was not due process, but whether the requirements of the grand jury statute had been followed. IND. CODE 35–3.1–1–4(a)(3), pertaining to dismissal of an indictment for a defect in grand jury proceedings, and IND.CODE 35–1–15–23, concerning a prosecutor's authority to be present during grand jury proceedings. For the current law, *see*, IND.CODE 35–34–1–4(a) 3 and 7 and IND. CODE 35–34–2–4.

In turn, *Goldsmith* was not resolved on a due process basis, but instead the issue was the application of the Code of Professional Responsibility and Disciplinary Rules to a prosecutor's staff. A deputy prosecutor filed a petition to withdraw from the underlying case and also sought the appointment of special counsel because of the likelihood that he would be called as a witness. The trial court disqualified the entire prosecutor's staff and appointed a special prosecutor. Additionally, the trial court determined the newly elected incoming prosecutor was disqualified.

Our supreme court held that the Disciplinary Rules do not require recusation of an entire prosecutorial staff in situations where a deputy prosecutor on that staff is a potential witness. The court examined DR5–102(A) and DR2–102(A) and concluded that they are primarily directed at private law firms with financial interests at stake in contrast to the relationship between a prosecutor and his circuit.

The court also drew a distinction between situations where a deputy prosecutor is seeking a replacement and where the prosecutor is petitioning for a replacement. In the latter case, the court concluded the entire prosecutorial staff must be recused to maintain the integrity of criminal justice.

It is apparent Daugherty's argument springs from this last point. He concludes that once Coleman petitioned for a special prosecutor, his entire staff had to be disqualified and then relying on *Hardy, supra,* concludes that the prosecutor could not participate in any aspect of the proceedings.

Again, we emphasize the distinction between due process considerations in relation to defendants and ethical considerations pertaining to lawyers. Judge Hoffman pointed out this distinction in *Branan v. State,* (1974) 161 Ind.App. 443, 316 N.E.2d 406 (dissenting opinion):

> However, regardless of the propriety of this attorney's conduct under the Code of Ethics, the only question germane to the case at bar is whether the events described hereinabove resulted in prejudice to the defendant's right to due process of law.
>
> . . . . .
>
> In the case at bar there was simply no evidence of prejudice to the defendant by reason of Mr. Whitman's acts presented at the hearing on Branan's petition. Indeed, the evidence presented at that hearing overwhelmingly supports the determination of the trial court herein. Mr. Whitman testified that he never divulged to any fellow prosecutor any information obtained by reason of his attorney-client relationship with Branan. Moreover, Mr. Whitman never actively participated in the prosecution of Branan.

316 N.E.2d at 409.

The test for determining whether a defendant has been denied due process because of an attorney's conflict of interest

resulting from his representation of both the defendant and prosecution was discussed in *Trinkle v. State,* (1972) 153 Ind. App. 524, 288 N.E.2d 165. Trinkle alleged he was denied a fair trial because the deputy prosecutor prosecuting theft charges had previously represented him on similar charges. We affirmed Trinkle's conviction after determining whether there was a substantial relationship between the prior representation and the criminal proceeding, and whether the prosecuting attorney gained any confidential information through their prior association.

Daugherty has shown that one deputy prosecutor, Hardin, discussed matters with him which ultimately resulted in the charge and conviction before us. However, Daugherty has not shown that Prosecutor Coleman received any confidential information from Hardin or that such information provided assistance to the prosecution. So although it may have been more ethically correct for Prosecutor Coleman to have recused himself prior to the grand jury proceedings, Daugherty has not shown that Coleman's failure to do so resulted in a denial of due process. *Trinkle v. State, supra.* Our conclusion remains unchanged even if we assume Hardin received privileged information from Daugherty, which is not clear from the record. Daugherty has not shown that confidential information was relayed to Coleman to assist the prosecution. It is not necessary to disqualify a prosecutor's entire staff or to dismiss an indictment because a deputy prosecutor has a conflict of interest. *Matthews v. State,* (1977) Tenn.App. 564 S.W.2d 678, 679; 7 Am.Jur.2d Rev. *Attorneys at Law* § 188 (1980).

After Judge Thomas K. Milligan assumed jurisdiction in this case,[1] the original special prosecutor, Oliver, filed a motion to withdraw because of his fear that he would not be compensated for his services based partially upon the Hendricks County Council's failure to pass a budget appropriation.

---

1. The charges which form the basis for this appeal were retried after an appeal. Judge Milligan presided at the retrial.

Judge Milligan subsequently attended a council meeting and requested it to appropriate funds to pay Oliver, which it refused to do. Then Judge Milligan mandated the council to appropriate funds.

Daugherty filed a motion for change of judge on the grounds that Judge Milligan's actions seeking compensation for the special prosecutor demonstrated he was not impartial. The motion was denied and Daugherty argues the trial court erred. He contends the trial judge's role as the special prosecutor's "benefactor" clearly raised the issue of his impartiality.

 Ind. Rules of Procedure, Criminal Rule 12 and IND.CODE 35-36-5-2 provide for a change of judge if a trial judge is biased or prejudiced against a defendant and the defendant cannot get a fair trial. A trial court's decision on a motion for change of judge will only be reversed for an abuse of discretion. *White v. State,* (1982) Ind., 431 N.E.2d 488. We do not find an abuse of discretion. Judge Milligan's actions were directed at a problem which has since been resolved by the General Assembly, the adequacy and availability of compensation for special prosecutors. IND.CODE 33-14-1-6. They did not go to the merits of the case or in any way hinder the defense. There is no indication Daugherty received an unfair trial as a result of the judge's efforts to procure compensation for the special prosecutor.

Daugherty argues the indictments should have been dismissed because of the untimely appointment of the jury commissioners in violation of IND.CODE 33-4-5-2. The statute requires the grand jury commissioners to be appointed annually in November and Daugherty argues they were appointed on December 2, 1980. He therefore contends the grand jury selection was not done in substantial compliance with the statute.

 The record shows the court actually appointed the jury commissioners on November 30, 1980, but they did not take their oath until December 2, 1980. A conviction will not be disturbed because of

technical defects in the jury selection process. *Hasselbring v. State,* (1982) Ind. App., 441 N.E.2d 514. Even if we assume the appointments were defective, the defect is clearly technical and not substantive. Daugherty has not shown how he was potentially prejudiced. The trial court did not err.

Daugherty argues the special prosecutor was improperly appointed because the appointment was made in accordance with IND.CODE 33-14-1-6 which became effective February 24, 1982. The original special prosecutor, Oliver, filed a petition to withdraw; it was granted and the trial court appointed Diana LaViolette, a deputy prosecutor from Putnam County. Daugherty challenged the appointment by an oral motion for a continuance or in the alternative, dismissal of the indictments. The motion was made after preliminary instructions were tendered and after voir dire had begun. The motion was made separately from Daugherty's other prior motions to dismiss. The trial court denied the motion, apparently summarily because the record does not reflect a hearing on it.

The State correctly points out that the motion to dismiss did not comply with IND. CODE 35-34-1-8, concerning the form of a motion to dismiss and the procedure for filing it, because it was not in writing; that the motion did not allege grounds for dismissal specified in IND.CODE 35-34-1-4; and that the motion for a continuance was not made upon statutory grounds specified in IND.CODE 35-36-7-1.

 I.C. 35-34-1-8(e) authorizes the trial court to summarily deny a motion to dismiss which is not based upon statutory grounds enumerated in I.C. 35-34-1-4 and Daugherty's motion falls within this category so the trial court did not err by denying it. Also, I.C. 35-34-1-4(b)(1) provides a motion to dismiss should be filed no later than twenty [20] days prior to the omnibus hearing in felony cases and Daugherty failed to comply although the appointment was made more than twenty days prior to the hearing.

I.C. 35–36–7–1 lists the statutory grounds for a continuance and denial of a motion that is not based upon statutory grounds will only be reversed for an abuse of discretion and upon a showing that defendant was prejudiced. *Spivey v. State,* (1982) 436 N.E.2d 61; *Maier v. State,* (1982) Ind., 437 N.E.2d 448. Daugherty has failed to show prejudice and his motion was properly denied.

Next, Daugherty argues the indictments should have been dismissed because the underlying offense supporting the charge of official misconduct, battery, does not fall within the parameters of conduct proscribed by IND.CODE 35–44–1–2, the statute defining official misconduct. This statute reads in relevant part:

> Official misconduct.—A public servant who: (1) Knowingly or intentionally performs an act that he is forbidden by law to perform.

Daugherty contends this language only refers to acts that a public servant is specifically forbidden to commit and that battery is a crime which all persons are forbidden to commit, but is not an act which public officials are expressly forbidden to commit, in contrast to conduct such as the prohibition against public officials having an interest in public contracts.

Daugherty raised this issue by a motion to dismiss and argued the indictment did not allege an offense. In his motion to correct errors, he relied on this argument and raised two additional issues: that the statute is unconstitutionally vague and that Daugherty is subjected to double jeopardy by the official misconduct charge and the battery charge. These constitutional challenges have been waived because they were not presented in a motion to dismiss prior to arraignment. *Salrin v. State,* (1981) Ind.App., 419 N.E.2d 1351; *Marchand v. Tyson,* (N.D.Ind.1983) 560 F.Supp. 882.

Turning to Daugherty's original argument that battery upon a prisoner is not an offense under the official misconduct statute, we bear in mind some familiar rules of statutory construction. Judicial interpretation of statutory language is warranted only when the meaning is unclear or ambiguous. *Livingston v. Consol. City of Indianapolis,* (1979) Ind.App., 398 N.E.2d 1302. When a statute contains clear unambiguous language, the only rule of construction which it is necessary to apply is the rule that words and phrases shall be taken in their plain or ordinary and usual sense. *State v. Bress,* (1976) 168 Ind.App. 397, 349 N.E.2d 229. This court's function and goal when examining a statute is to ascertain and implement the General Assembly's intent. *Livingston, supra; Bress, supra.* We do not question the wisdom of legislative enactments or substitute our opinion for the legislature's viewpoint. *Dague v. Piper Aircraft Corp.,* (1981) Ind., 418 N.E.2d 207. To determine the legislature's intent, we examine the act as a whole and any changes which have been made to it. *Livingston, supra.*

We find no language in section 2(1) that restricts the forbidden offenses to those acts which only public officials are forbidden to commit. Reading the entire Offenses Against Public Administration article, IND.CODE 35–44–1–1 *et seq.,* section 2(1) appears to supplement more specific prohibitions such as bribery in section 1 and conflict of interest in section 3. Although the statute has recently been amended, the legislature did not alter section 2(1), *see,* IND.CODE 35–44–1–2, *Commentary,* B.J. Small, West's Ann.Ind.Code, (1978) p. 75. We are aware of potential problems in relation to the Eighth Amendment when offenses such as theft are charged as felonies, while the misconduct charge is a misdemeanor. *Id.* at p. 77. Additionally, a public official might possibly be charged with a violation unrelated to his position due to the broad statutory language. *Id.* at 75. Nevertheless, we are not faced with similar situations in the case at bar and there is no need to speculate on possible restrictions on the statute. Daugherty was clearly acting in his official capacity as sheriff when the battery was committed. Therefore, we conclude the indictment did state an offense.

▆ We also do not find the jury's failure to return a verdict on the battery charge inconsistent with its guilty verdict on the misdemeanor charge. Daugherty argues that if there was no conviction for battery, then there could be no conviction for official misconduct based upon commission of battery. This argument is superficially persuasive and is partially based upon the trial court's remark that the jury's failure to return a verdict is equivalent to a not guilty verdict. We disagree.

One element of the official misconduct charge was proof that battery was committed; proving the battery encompassed the usual elements of battery. However, the misconduct charge also included additional elements, proof that Daugherty was a public servant and that the act was illegal. *As charged,* the battery was a lesser offense than the official misconduct charge, a class B misdemeanor and a class A misdemeanor respectively, and was punishable by lesser sentences. Thus, the battery charge is analogous to a lesser included offense. *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098, IND.CODE 35–41–1–16. The official misconduct verdict is not inconsistent or impossible in relation to the lack of a verdict on the battery charge. By finding Daugherty guilty of official misconduct, the jury determined he had committed battery.

Next, Daugherty asserts the trial court erred by allowing an inmate, Webb, to testify about the alleged batteries on two other inmates, Sandlin and Sexton, in addition to the battery committed on him which formed the basis for the conviction being appealed. Daugherty argues the evidence was irrelevant and prejudicial because the charges related to Sandlin and Sexton had already been resolved in a separate trial. The trial court allowed the testimony on the basis of *res gestae* and "totality of the circumstances".

Webb testified about the sequence in which the three inmates were taken from

their cells and questioned about the obscene picture that he had drawn. He explained Sandlin was taken first, that he heard slapping sounds and that Sandlin had welts on his face shaped like handprints when he was returned. Then Webb was questioned for about ten minutes, returned to his cell while Sexton was questioned and then Webb was questioned again.

▆ Evidence of other criminal activity is generally inadmissible, but if it is closely connected to the charged offense in terms of time and place and is factually interrelated, it can be admissible. *Beasley v. State,* (1983) Ind., 452 N.E.2d 982. In order for Webb to give a complete explanation of event, it was necessary for him to mention the other two inmates. The trial court did not abuse its discretion because the batteries against Sandlin and Sexton were interwoven with the charged offense.

Last, Daugherty argues he was improperly sentenced because the trial court did not have the authority to have him serve his sentence in the Hendricks County jail and because the trial court improperly "disenfranchised" him from holding public office for ten years.

The State concedes the trial court could not order the sentence served in Hendricks County.

▆ In regard to the bar against holding public office, Daugherty makes a specious argument. He claims that IND. CODE 35–50–5–1 was repealed effective September, 1981, one month prior to his conviction, and that because the subsequent statute, IND.CODE 35–50–5–1.1 cannot be given retroactive effect, there was no statute in effect. I.C. 35–50–5–1 did provide for the ten year prohibition against holding public office and because it was in effect when the crime occurred, it is clearly the applicable sentencing statute. *Parsley v. State,* (1980) 273 Ind. 46, 401 N.E.2d 1360, (cert. den., 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79).[2]

**2.** An exception to this rule can occur when the legislature specifically states it intends to reduce punishment that was too severe for the offense.

*See, Watford v. State,* (1979) 270 Ind. 262, 384 N.E.2d 1030. We note that I.C. 35–50–5–1.1 is in its relevant parts a recodification of an existing

With the exception of the trial court's order that the sentence be served in the Hendricks County jail, the judgment is affirmed. The portion of the judgment pertaining to the place where the sentence will be served is reversed.

Affirmed in part and reversed in part.

NEAL, P.J., concurs.

RATLIFF, J., concurs with separate opinion.

RATLIFF, Judge, concurring.

Although I concur on the majority opinion, I believe some additional comment is appropriate regarding the issue of whether or not battery committed upon prisoners in the county jail by the county sheriff comes within the ambit of official misconduct under Indiana Code section 35–44–1–2(1). The heart of this issue is the closeness in relation to the duties of the office of the actions claimed to be official misconduct.

It has been stated that the language of Ind.Code § 35–44–1–2(1) is broad enough in scope to render official misconduct any crime committed by a person who happens to be a public official, but that the legislature's intent was to make official misconduct only those crimes which could be committed only by a public official. West's A.I.C. § 35–44–1–2 *Commentary* by B.J. Small. Both analyses are, in my opinion, incorrect. Under the first premise, any offense committed by a public official would be official misconduct no matter how far removed from any official duties. The second premise would exclude such crimes as theft, bribery, forgery, and perjury, for example, from the purview of official misconduct, because such acts are crimes when committed by anyone, although the public clearly would consider any such actions by a public official to be official misconduct. Rather, the focus must be on whether the act was done by a public official in the course of his official duties. *See*

*People v. Genser*, (1967) 250 Cal.App.2d 351, 56 Cal.Rptr. 380 (conduct which constitutes an offense against public justice or the administration of law includes both malfeasance and nonfeasance by an officer in connection with the administration of his public duties).

Where the alleged misconduct bears no relation to official duties, there is no official misconduct. For example, a conviction for misconduct cannot rest upon criminal behavior which is unrelated to the performance of official duties. *Kauffman v. Glassboro*, (1981) 181 N.J.Super. 273, 437 A.2d 334 (burglary by a police officer unrelated to official duties). On the other hand forgeries of endorsements on checks received in payment of traffic fines which forgeries were done by clerk receiving the checks were held to be sufficiently related to official duties to constitute misconduct. *State v. Schultz*, (1976) 71 N.J. 590, 367 A.2d 423. Likewise, sale by the police chief of confidential police information to a key figure in organized crime was held sufficient proof of official misconduct. *State v. Hess*, (1983) 279 S.C. 14, 301 S.E.2d 547.

In this case, Daugherty was the county sheriff charged with the duty of keeping prisoners in the county jail. The evidence showed mistreatment of prisoners in the form of beatings administered to such prisoners. Mistreatment of prisoners is wrong in itself,[1] and the beatings here clearly constituted the crime of battery. That such crime was committed in the course of Daugherty's official duties cannot be doubted.

Daugherty's acquittal of the separate battery charge does not entitle him to a reversal of the conviction of official misconduct. It has been held that where bribery and misconduct charges were based on the same factual allegations, acquittal of bribery did not necessarily impugn the validity

---

penalty. Therefore, the situation is not a case where the legislature has re-evaluated a sentence. Neither is it an *ex post facto* penalty.

1. *See* Indiana Code section 11–11–5–4(1) prohibiting the Indiana Department of Correction imposing corporal punishment as a disciplinary action.

of the misconduct conviction. *State v. Peterson*, (1981) 181 N.J.Super. 261, 437 A.2d 327, *cert. denied* 89 N.J. 413, 446 A.2d 144. Here, the commission of the acts of battery which formed the basis for the official misconduct charge was clearly proven. Under those circumstances, that the jury, for whatever reason, acquitted Daugherty of the separate charges of battery, does not vitiate the conviction of official misconduct.