## 22639

The STATE, Respondent v. Earl MATTHEWS, Jr., Appellant.

(353 S. E. (2d) 444)

Supreme Court

*Asst. Appellate Defender Tara D. Shulring, of S. C. Office of Appellate Defense, Columbia, for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., and Carolyn M. Adams, Columbia, and Sol. Charles M. Condon, Charleston, for respondent.*

Heard Sept. 16, 1986.

Decided Dec. 15, 1986.

HARWELL, Justice:

Appellant Earl Matthews, Jr. was found guilty of murder, armed robbery, assault and battery with intent to kill, attempted armed robbery, aggravated assault and battery, and unlawful possession of a pistol. On the recommendation of the jury, the trial judge sentenced him to death for murder. Appellant received 25 years, 20 years, 20 years, and one year, all to run consecutively, for the remaining crimes.

This case consolidates appellant's direct appeal and our mandatory review of the death sentence pursuant to S. C. Code Ann. § 16-3-25 (1976, as amended). We affirm the conviction, reverse the death sentence, and remand for a new sentencing proceeding.

On the evening of October 29, 1984, the 16 year old decedent and her 16 year old boyfriend bought their dinner at a drive through restaurant. While they were parked in a nearby, empty parking lot eating their dinner and talking, appellant approached the driver's side of the car where the boyfriend was seated. Appellant pulled out a handgun and demanded the boy's money. While the boy was looking through the car for money, the appellant struck him across the face, breaking his nose. The boy found five dollars in his girlfriend's purse. At appellant's direction, he put the five dollars back into the pocketbook and handed it to appellant. While appellant was going around to the passenger's side of the car, the decedent locked her door and tried to roll up her window. According to the boy's testimony, appellant prevented her from rolling up the window and said, "Come on, let's take a little ride." When the decedent's boyfriend told him they were not going for a ride, appellant stepped back, shot the girl in the head, and shot the boy in the chest. The girl was pronounced dead later in a local hospital and her kidneys were donated for transplantation. The decedent's boyfriend recovered from his chest wound and testified at trial.

## GUILT PHASE

Appellant alleges that the trial court judge erroneously refused to strike two prospective jurors for cause. Appellant used two of his peremptory strikes to excuse these two jurors and appellant exhausted his peremptory challenges prior to the empaneling of the jury. It is appellant's contention that the responses of these two prospective jurors on *voir dire* indicated that they were predisposed to recommend the death penalty in all murder cases.

A juror must be excluded only if his views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U. S. 412, 433,

105 S. Ct. 844, 857, 83 L. Ed. (2d) 841, 851-52 (1985). Both potential jurors stated that they could impose either a life or death sentence depending on the facts and circumstances. Based on the entire colloquies, we find that these two jurors were properly qualified by the trial judge. *See State v. Singleton,* 284 S. C. 388, 326 S. E. (2d) 153 (1985), *cert. denied,* 471 U. S. 1111, 105 S. Ct. 2346, 85 L. Ed. (2d) 863 (1985).

Appellant also claims that the trial court erred in excusing two prospective jurors based on their opposition to the death penalty. Appellant asserts that despite their personal reservations about the death penalty, their responses on *voir dire* indicated that they could consider all possible penalties including the death sentence. Each juror's response must be examined in light of the entire colloquy. *State v. Spann,* 279 S. C. 399, 308 S. E. (2d) 518 (1983), *cert. denied,* 466 U. S. 947, 104 S. Ct. 2146, 80 L. Ed. (2d) 533 (1984). The responses given by each of these jurors clearly indicate that his views would prevent or substantially impair him from performing his duty. When a potential juror is prevented from rendering an impartial decision or voting for the death penalty, the trial court can exclude him because of his inability to carry out his duty under the law. *Lockhart v. McCree,* _____ U. S. _____, 106 S. Ct. 1758, 90 L. Ed. (2d) 137 (1986); *Wainwright v. Witt, supra; Adams v. Texas,* 448 U. S. 38, 100 S. Ct. 2521, 65 L. Ed. (2d) 581 (1980); *State v. Hyman,* 276 S. C. 559, 281 S. E. (2d) 209 (1981), *cert. denied,* 458 U. S. 1122, 102 S. Ct. 3510, 73 L. Ed. (2d) 1384 (1982). The trial judge did not abuse his discretion in excusing these jurors.

Appellant maintains that the trial court improperly restricted the *voir dire* questions so as to preclude a determination of a prospective juror's potential to serve despite reservations about capital punishment. The method and scope of *voir dire* are matters largely within the discretion of the trial court. *State v. Smart,* 278 S. C. 515, 299 S. E. (2d) 686 (1982), *cert. denied,* 460 U. S. 1088, 103 S. Ct. 1784, 76 L. Ed. (2d) 353 (1983) [*Smart II*]; *State v. Thompson,* 278 S. C. 1, 292 S. E. (2d) 581 (1982). The rulings of a trial judge on matters within his discretion will generally not be reversed absent an abuse of discretion. *State v. Tyner,* 273 S. C. 646, 258 S. E. (2d) 559 (1979). After reviewing the tran-

script of the entire *voir dire*, we find that appellant has not demonstrated any abuse of discretion on the part of the trial judge.

Appellant asserts that the trial court erred in refusing to strike a prospective juror for cause based on his employment with the criminal investigation division of the Navy and his prior employment with the Charleston County Police Department. Appellant claims that his challenge for cause of this prospective juror should have been sustained under S. C. Code Ann. § 14-7-820 (1976). That section provides:

> No clerk or deputy clerk of the court, constable, sheriff, probate judge, county commissioner, magistrate, or other county officer or any person employed within the walls of any courthouse shall be eligible as a juryman in any civil or criminal case.

The prospective juror did not hold any of the positions covered by the statute. Unlike the situation in *State v. Johnson*, 123 S. C. 50, 115 S. E. 748 (1923), on which appellant relies, the prospective juror here was not a deputy sheriff and was not required to take the oath of office prescribed by the South Carolina Constitution and South Carolina statutes. Even a special deputy sheriff is not automatically disqualified without a showing of bias or prejudice. *Bryant v. State*, 264 S. C. 157, 213 S. E. (2d) 451 (1975). *See also State v. Hess*, 279 S. C. 14, 301 S. E. (2d) 547 (1983), *cert. denied*, 464 U. S. 827, 104 S. Ct. 100, 78 L. Ed. (2d) 105 (1983) (former SLED agent qualified to serve as a juror).

As an officer of the United States, this prospective juror could have claimed an exemption from jury service pursuant to S. C. Code Ann. § 14-7-850 (Supp. 1985). An exemption under this section is a privilege and not a disqualification. The parties may not object to a prospective juror due to his employment status under Section 14-7-850 if the prospective juror himself does not claim his privilege of exemption. *State v. Graham*, 79 S. C. 116, 60 S. E. 431 (1908).

The trial judge must assure himself that each juror is unbiased, fair, and impartial. *State v. Gulledge*, 277 S. C. 368, 287 S. E. (2d) 488 (1982). The qualification of a juror is addressed to the sound discretion of the trial

judge, whose decision will not be disturbed unless wholly unsupported by the evidence. *State v. Gilbert*, 277 S. C. 53, 283 S. E. (2d) 179 (1981), *cert. denied*, 456 U. S. 984, 102 S. Ct. 2258, 72 L. Ed. (2d) 863 (1982). We find that this juror was properly qualified.

As to the admission of his confession, appellant claims that the trial judge erred by: 1) failing to make a finding on the record that appellant received, understood, and waived his *Miranda* rights before giving a statement; and 2) failing to instruct the jury members that in addition to determining whether the statement was voluntary, they must also determine whether appellant received, understood, and waived his *Miranda* rights. We have held that before the state can admit a defendant's statement into evidence, the state must show affirmatively that "the statement was voluntary *and* taken in compliance with *Miranda.*" *State v. Middleton*, 288 S. C. 21, 25, 339 S. E. (2d) 692, 694 (1986). The record reveals that the trial judge properly made an affirmative finding that appellant's confession was both voluntary and given after he understood and waived all *Miranda* rights. While the trial court's finding could have been more articulate, it clearly passes constitutional muster.

Appellant's contention that the trial judge erroneously failed to properly charge the jury concerning appellant's waiver of his *Miranda* rights is meritless. As we said in *State v. Patterson*, 285 S. C. 5, 9-10, 327 S. E. (2d) 650, 652 (1984), *cert. denied*, 471 U. S. 1036, 105 S. Ct. 2056, 85 L. Ed. (2d) 329 (1985):

> We find no reversible error in the judge's failure to require the jury, before considering the statement, to find a waiver of constitutional rights. The jury could not have found that the statement was given freely and voluntarily unless it believed that the appellant had waived his constitutional rights. This exception lacks merit.

*See also, State v. Elmore*, 286 S. C. 70, 332 S. E. (2d) 762 (1985).

This is especially true in this case given the line of questions asked by appellant's own attorney. In an effort to stress how cooperative the appellant had been, the defense

attorney engaged in the following colloquy with one of the arresting officers:

> Q. And once in the police car, Lieutenant Frazier told him his rights, is that correct?
> A. Correct.
>
> . . . .
>
> Q. Okay, and he chose not — even after being warned, he decided to go ahead and be straight with you and tell you whatever you wanted to know, isn't that right?
> A. Yes, sir.
>
> . . . .
>
> Q. At the station, once again you read him his rights, isn't that correct?
> A. Yes.

Appellant can not use his voluntary waiver of his Fifth Amendment rights to demonstrate his cooperation to the jury on the one hand and deny that he received, understood, and waived those rights on the other.

Appellant also contends that the trial court erred in denying appellant's motion for an expansion of the statutory limits on defense expenditure of funds for the procurement of expert witnesses. The trial judge ruled that the defense team was authorized to spend up to the two thousand dollar statutory limit pursuant to S. C. Code Ann. § 16-3-26(C) (1976). We have held that this statutorily mandated spending cap is constitutional. *State v. Goolsby*, 278 S. C. 52, 292 S. E. (2d) 180 (1982). The defense team was allowed to reserve the right to petition for an expansion of that amount. In the instant case, the record establishes that not only did the state provide appellant with the services of a published medical expert on "brain death," but also that defense counsel exhaustively cross-examined the state's expert witnesses on appellant's behalf. Authorization for expenditure of funds for expert witnesses is addressed to the sound discretion of the trial judge and will not be disturbed absent an abuse of that discretion. *State v. Yates*, 280 S. C. 29, 310 S. E. (2d) 805 (1982); *State v. Owens*, 277 S. C. 189, 284 S. E. (2d) 584 (1981). The trial judge properly exercised his discretion in ruling on the amount of funds which the state would make available to appellant for expert witnesses.

Appellant has failed to demonstrate any prejudice resulting from that ruling.

Appellant excepts to the trial judge's jury charge on proximate cause. Appellant's defense revolved around his assertion that the doctors declared the victim brain dead prematurely and therefore the removal of her kidneys created a superseding cause of death which relieved appellant of liability for murder. Due to recent advances in the medical field and the willingness of families to authorize organ donations, the issue of proximate cause in cases where organs are transplanted from homicide victims is being addressed by a growing number of courts. *See, e.g., People v. Eulo,* 63 N. Y. (2d) 341, 482 N. Y. S. (2d) 436, 472 N. E. (2d) 286 (1984); *People v. Bonilla,* 95 A. D. (2d) 396, 467 N.Y. (2d) 599 (1983); *People v. Mitchell,* 132 Cal. App. (3d) 389, 183 Cal. Rptr. 166 (1982); *State v. Fierro,* 124 Ariz. 182, 603 P. (2d) 74 (1979); *Lovato v. District Court In and For Tenth Judicial District,* 198 Colo. 419, 601 P., (2d) 1072 (1979); *Commonwealth v. Golston,* 373 Mass. 249, 366 N. E. (2d) 744 (1977); *State v. Shaffer,* 223 Kan. 244, 574 P. (2d) 205 (1977).

In the present case, appellant conceded that negligent medical treatment would not relieve him from liability for injury from an act he committed. "It has been held in South Carolina that the negligence of an attending physician is reasonably foreseeable." *Graham v. Whitaker,* 282 S. C. 393, 399, 321 S. E. (2d) 40, 44 (1984). Appellant asserts, however, that the election to declare the victim brain dead and harvest her kidneys does not constitute medical treatment. Appellant contends that the jury should have been charged to apply the foreseeability test in determining proximate cause, *see Stone v. Bethea,* 251 S. C. 157, 161, 161 S. E. (2d) 171, 173 (1968). Since the jury was charged on the applicable law of proximate cause regarding medical treatment instead, appellant claims that the judge's charge was obviously based on the assumption that the declaration of brain death and the removal of the kidneys constituted medical care. Appellant asserts that this assumption constituted a charge on the facts in violation of Article V, Section 17 of the South Carolina Constitution.

On this basis, appellant disputes portions of the charge on proximate cause. Since the issue of harvesting organs from a

brain dead murder victim is a novel one in South Carolina, we feel that the following portion of the judge's jury charge on this issue has sufficient precedential value to warrant setting it forth verbatim:

Now, in this case if the victim in this case was properly diagnosed as dead as the proximate result of the gunshot wound, then no subsequent medical procedure, such as organ removal, would be deemed a cause of death.

If the victim's death was prematurely pronounced due to the negligence of a medical practitioner or practitioners, the subsequent procedures may have been a cause of death, but that negligence would not constitute a superseding cause of death, relieving the Defendant of liability.

If however, the pronouncements of death were premature due to the gross negligence or the intentional wrongdoing; that is, the reckless or willful wrongdoing, again of a medical practitioner or practitioners, as determined by a grave deviation or gross dilation from accepted medical practices, or disregard for legally cognizable criteria for determining death, or acceptable or — disregard for medically accepted and cognizable criteria for determining death, the intervening medical procedure would then interrupt the chain of causation and then become the legal cause of death.

Thus, the propriety of the medical procedures is an integral question to causation.

To summarize that, negligence on the part of some one would not relieve the defendant from liability if his injury were again the proximate cause of the death as to that negligence.

However, gross negligence or intentional activity on the part of the same practitioners would so relieve him.

The decision to declare a patient dead and to harvest organs for transplantation is clearly part of the care or duty that a doctor is responsible for providing. We hold that the actions of the doctor did constitute medical care. The trial judge's charge, which was taken from *People v. Eulo*, 63 N. Y. (2d) 341, 482 N. Y. S. (2d) 436, 472 N. E. (2d) 286 (1984), was

entirely proper in the present case. Appellant's exception lacks merit.

## SENTENCING PHASE

Appellant asserts that the trial court erred in refusing to admit sentencing phase testimony from a clinical psychologist regarding appellant's future adaptability to prison life. Appellant bases this claim on *Skipper v. South Carolina*, 476 U. S. _____ , 106 S. Ct. 1669, 90 L. Ed. (2d) 1 (1986), a United States Supreme Court case that was decided subsequent to appellant's trial. In the present case, unlike *Skipper*, the state did not call into issue in any way the appellant's behavior in prison. In fact, testimony adduced at trial showed that appellant had been cooperative, quiet, and respectful. Following approximately 12 pages of testimony from the clinical psychologist who evaluated appellant, the defense counsel made the following proffer: "Judge, we would like to proffer some testimony on adaptability to prison life. We understand we are not allowed to put that in, but just for the record we would like to proffer it." The trial judge ruled that the proffered evidence was inadmissible.

In *State v. Koon*, 278 S. C. 528, 298 S. E. (2d) 769 (1982) ██ ██(*Koon I*), this Court held that expert testimony regarding a defendant's future adaptability to prison life was irrelevant and therefore inadmissible as evidence in mitigation of death. In a subsequent appeal in the same case, *State v. Koon*, 285 S. C. 1, 328 S. E. (2d) 625 (1984) (*Koon II*), we distinguished evidence of past adaptability to prison life from evidence of future adaptability and found only past behavior to be relevant. *Skipper*, in effect, erases this distinction and reverses our holding in *Koon I* by requiring the admission of competent evidence that is relevant to future adaptability. *Skipper* does not require the admission of incompetent opinion testimony of future adaptability, nor does it require the inclusion of evidence that cannot be shown to be relevant to future adaptability.

Pursuant to the United States Supreme Court holding in *Skipper*, the clinical psychologist's proffered testimony relating to the appellant's future adaptability to prison life should have been admitted. In this case, the failure to admit that testimony was reversible error. The sentencing phase of

the trial is accordingly reversed and remanded. The guilt phase is affirmed.

Affirmed in part; reversed in part; and remanded.

GREGORY, CHANDLER and FINNEY, JJ., concur.

NESS, C. J., concurs in result only.