492 S.E.2d 802

**The STATE, Respondent,**

v.

**Henrietta LYLES–GRAY, Appellant.**

**No. 2721.**

Court of Appeals of South Carolina.

Submitted Sept. 9, 1997.

Decided Sept. 29, 1997.

Rehearing Denied Nov. 20, 1997.

I.S. Leevy Johnson and George C. Johnson, both of Johnson, Toal, & Battiste, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliot, Assistant Attorney General G. Robert Deloach, III; and Solicitor Warren B. Giese, Columbia, for respondent.

GOOLSBY, Judge:

Henrietta Lyles–Gray was convicted of two counts of common-law obstruction of justice and two counts of official misconduct in office as an officer in the Camden Police Department. Lyles–Gray appeals. We affirm.[1]

## FACTS

On the evening of December 2, 1994, Betty Kennedy was working as a security manager at the Belk's store in Camden when she saw two suspicious women, later identified as Renee Lyles and Valerie Drakeford. Drakeford carried an unzipped

---

1. Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument pursuant to Rule 215, SCACR.

purse around the store while Lyles carried a shopping bag. The women carried clothing into the fitting rooms without looking at the price tag or size. Kennedy, therefore, suspected the women were shoplifting because of their strange behavior.

While observing Drakeford and Lyles, Kennedy pretended to shop with her daughter Linda. Lyles tossed a sweater into the air, allowing it to drop to the floor; then Lyles placed the sweater into the shopping bag. Lyles and Drakeford were chatting with Niki Hinson, a sales clerk, when Lyles said she needed a checkbook and left to go outside. Kennedy then asked Linda to follow Lyles outside. Linda saw Lyles unlock a blue Ford Escort parked near the store entrance. Lyles placed the bag on the floorboard, locked the car, and returned to the store.

While Lyles was outside, Kennedy asked someone to call the police and asked Stephanie Griffin, a sales manager, for help. Kennedy also asked Hinson to identify the shoplifter. Hinson then identified the woman carrying the shopping bag as Renee Lyles and Valerie Drakeford as her companion.

Linda reported the theft to Sergeant George Waters. When Sergeant Waters arrived at the scene, he shined his flashlight in the Escort and saw the shopping bag on the floorboard. Sergeant Waters waited in his patrol car for the owner of the Escort to leave.

As Drakeford and Lyles left the store, Kennedy followed them outside, identified herself, and asked to look in the car. Sergeant Waters drove his patrol car behind the Escort and blocked it from leaving. Lyles offered to allow Sergeant Waters to search a Hyundai that either Lyles or Drakeford was driving. Lyles denied any knowledge of the Escort. During this conversation, Lyles repeatedly stated, "Let's go let's go." Lyles and Drakeford eventually left in the Hyundai.

Sergeant Waters ran a license check on the Escort and learned that Lyles–Gray owned the Escort. Lyles–Gray is Renee Lyles's mother and was at that time a Camden city police officer. Sergeant Waters had the police dispatcher call Lyles–Gray. When Lyles–Gray was on the telephone, Waters asked if a locksmith could open the Escort. Lyles–Gray told Sergeant Waters to "leave it alone." Following this conversa-

tion, Sergeant Waters called Chief Jack Cobb at home. After Sergeant Waters explained to Chief Cobb that the evidence was in Lyles–Gray's car, Chief Cobb instructed Sergeant Waters to tell Kennedy that the vehicle belonged to a police officer and that the police officer would take care of it as soon as she got there.

After Sergeant Waters left, Kennedy, Adele Holbrook, and Stephanie Griffin waited for the owner of the Escort. After Griffin and Holbrook went inside, Kennedy saw a light-colored car park beside the Escort. Lyles–Gray got out of that car and unlocked the Escort.

Kennedy testified that when she walked to Lyles–Gray's Escort and tapped on the window, Lyles–Gray ignored her. When Kennedy knocked again, Lyles–Gray asked, "Do you know who I am?" Kennedy identified herself and told Lyles–Gray she believed there was stolen merchandise in the Escort. Lyles–Gray responded, "I'm Henrietta Gray with the Camden City Police Department, and I think not." When Kennedy asked Lyles–Gray for the merchandise, she said, "I think not, lady," and drove away.

Chief Cobb later met with Kennedy and other store personnel at the station. After Kennedy described the incident, Chief Cobb spoke to Lyles–Gray, who told Chief Cobb, "It's my car, I'll drive it anywhere I want to" and "Them [sic] people are crazy, and I'll go up and tell them." Chief Cobb ordered Lyles–Gray to go home and prepare a warrant when she returned to work. Chief Cobb also stated he wanted the merchandise brought to the station. On the following Monday, Lyles–Gray showed Chief Cobb an arrest warrant for Nechelle Drakeford, and he considered the matter closed.

When Kennedy went to the magistrate's office on December 5 to sign several arrest warrants, she saw Drakeford's arrest warrant. The warrant stated what Kennedy observed on that night, including that she observed Drakeford put the sweater into the shopping bag and later place it into the Escort. Kennedy, however, testified Lyles–Gray never interviewed her about the case. Kennedy refused to sign the warrant. Kennedy denied seeing Drakeford place the sweater into the Escort as the warrant stated. Moreover, Kennedy identified

the shoplifter as Renee Lyles when she reported the crime and denied seeing Nechelle Drakeford in the store.

Kennedy reported the defective arrest warrant to store manager Will Kuhne, who later met with Chief Cobb. Chief Cobb met with Lyles–Gray and Sergeant Herbie Frazier and turned the investigation over to Sergeant Frazier. Chief Cobb also ordered Lyles–Gray to give the evidence to Sergeant Frazier. Sergeant Frazier asked Lyles–Gray for any evidence in her possession, but she never gave the evidence to Sergeant Frazier.

On December 8, 1994, after interviewing the Kennedys and Niki Hinson, Sergeant Frazier charged Renee Lyles with shoplifting. When the case was called to trial in March 1995, however, the assistant solicitor discovered the police did not have the sweater. The solicitor learned that Renee Lyles's attorney, Doug Robinson, had the sweater. Lyles had retained Robinson to represent her in January. Robinson testified that, at the time he agreed to represent Lyles, he learned that Lyles–Gray still had the sweater in her car. Chief Cobb testified that when he asked Lyles–Gray about the sweater, she confirmed she gave it to attorney Robinson. At Chief Cobb's request, Robinson brought the sweater to the station. Chief Cobb testified he kept the sweater in his desk rather than in the evidence locker because the chain of custody was already broken.

At Chief Cobb's request, SLED agent Alice Shealy investigated Lyles–Gray in her conduct of the shoplifting investigation. Following this investigation, the Kershaw County grand jury indicted Lyles–Gray for obstruction of justice and misconduct in office.

At trial, Nechelle Drakeford stated she stole the sweater from Belk's while shopping with Lyles and Valerie Drakeford. Nechelle Drakeford also stated that she admitted the shoplifting when Lyles–Gray questioned her.

## DISCUSSION

### I.

Lyles–Gray first contends the trial court erred in not quashing her indictments for common-law obstruction of justice,

claiming section 16–9–340 supersedes common-law obstruction of justice. We disagree.

■ Under common-law obstruction of justice, "it is an offense to do *any* act which prevents, obstructs, impedes, or hinders the administration of justice." *State v. Cogdell*, 273 S.C. 563, 567, 257 S.E.2d 748, 750 (1979) (emphasis added). Section 16–9–340, codified under article 4 of the criminal code concerning interference with judicial process, provides in pertinent part as follows:

**16–9–340. Intimidation of court officials, jurors or witnesses.**

(A) It is unlawful for a person by *threat or force* to:

    (1) intimidate or impede a judge, magistrate, juror, witness, or potential juror or witness, arbiter, commissioner, or member of any commission of this State or any other official of any court, in the discharge of his duty as such; or

    (2) destroy, impede, or attempt to obstruct or impede the administration of justice in any court.

S.C.Code Ann. § 16–9–340 (Supp.1996) (emphasis added). Section 16–9–380 provides that article 4 "codifies *various* common law crimes and supersedes them...." S.C.Code Ann. § 16–9–380 (1985) (emphasis added).

■ The two indictments for obstruction of justice do not allege that Lyles–Gray obstructed justice by "threats or force." Moreover, section 16–9–340 principally applies to those acts that use threat or force against court officials and members of administrative agencies. Although the statute codifies *"various* common law crimes," it does not purport to codify or supersede *all* of them. Indeed, a person can commit obstruction of justice by use of force or threats; however, such conduct is neither an essential element of, nor the only means of committing, the crime of common-law obstruction of justice. *See State v. Love*, 275 S.C. 55, 61, 271 S.E.2d 110, 113 (1980) (former magistrate's procurement of invalid driver's license for an individual and promise to fix traffic records and "fix the prosecution" against the individual for $5,500 was sufficient evidence to establish common-law obstruction of justice), *cert. denied*, 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 131 (1980); *Cogdell*, 273 S.C. at 567, 257 S.E.2d at 750 (holding that the

"intentional failure of a responsible public official to report convictions of traffic violations so as to interrupt or prevent the mandated suspension of a motorist's drivers [*sic*] license is an obstruction of justice and punishable at common law"); *State v. De Witt,* 20 S.C.L. (2 Hill) 282 (1834) (fabrication of evidence sufficient to establish common-law obstruction of justice).

We, therefore, conclude section 16–9–380 does not prohibit the State's prosecution of Lyles–Gray for conduct amounting to common-law obstruction of justice. *See State v. Prince,* 316 S.C. 57, 66, 447 S.E.2d 177, 182 (1993) ("Common law offenses are not abrogated simply because there is a statutory offense proscribing similar conduct."); WILLIAM S. McANINCH AND W. GASTON FAIREY, THE CRIMINAL LAW OF SOUTH CAROLINA 430 (3d ed. 1996) ("Many other acts do not fall within the statutory scheme of Article 4, such as destruction or substitution of evidence or dissuading or preventing a witness from attending or testifying at a trial. These acts, therefore, would be punishable under the common law as obstruction of justice.").

## II.

Lyles–Gray also argues the trial court erred in denying her motion for a directed verdict. We disagree.

The trial court should grant a directed verdict in a criminal case if evidence fails to raise more than a mere suspicion that the accused is guilty. *State v. Barksdale,* 311 S.C. 210, 428 S.E.2d 498 (Ct.App.1993). In reviewing a trial court's refusal to grant a directed verdict, this court must view the evidence in the light most favorable to the state to determine whether there is any direct or any substantial circumstantial evidence that reasonably tends to prove the guilt of the accused or from which guilt may fairly and logically be deduced. *State v. Childs,* 299 S.C. 471, 385 S.E.2d 839 (1989).

As mentioned above, common-law obstruction of justice is conduct that "prevents, obstructs, impedes or hinders the administration of justice." *Cogdell,* 273 S.C. at 567, 257 S.E.2d at 750. Misconduct in office occurs when persons in

public office fail to properly and faithfully discharge a duty imposed by law. *State v. Hess,* 279 S.C. 14, 301 S.E.2d 547 (1983), *cert. denied,* 464 U.S. 827, 104 S.Ct. 100, 78 L.Ed.2d 105 (1983).

The indictments allege Lyles–Gray obstructed justice and committed misconduct in office because she (1) failed to interview witnesses after Renee Lyles was identified as a suspect, (2) obtained a false arrest warrant for Nechelle Drakeford's arrest, and (3) refused to turn over the sweater to Belk's personnel or the investigating officer.

Lyles–Gray argues she was unaware Renee Lyles was the shoplifting suspect; she attempted to contact Belk's employees after the incident; she did not knowingly refuse to return the evidence to Belk's; and her investigation pointed toward Nechelle Drakeford, rather than her daughter, as the shoplifter.

Renee Lyles testified she drove Lyles–Gray's Escort. Brenda Johnson, George Waters, Sergeant Waters, and Kennedy all testified they informed Lyles–Gray the shoplifter placed stolen goods in her car. Kennedy stated that Lyles–Gray never attempted to contact her before obtaining the warrant for Drakeford's arrest and that Lyles–Gray refused to discuss the stolen goods after the witness identified herself. Chief Cobb testified Lyles–Gray should have interviewed the security personnel when she retrieved her car. Chief Cobb also testified Lyles–Gray should have removed the stolen merchandise from the car when she met with the Belk's employees. Although Chief Cobb ordered Lyles–Gray to give the sweater to Sergeant Frazier, when Sergeant Frazier asked for the sweater, Lyles–Gray "just sort of avoided [him] and didn't bring it back to [him]."

These facts should have given Lyles–Gray notice that her daughter was a possible suspect. Finally, Lyles–Gray's conduct at the crime scene and her mishandling of the evidence is circumstantial evidence of her knowledge that her daughter was a suspect.

Although Nechelle Drakeford testified she was the shoplifter, this admission is not dispositive because the trial court is concerned with the existence of evidence and not its weight when deciding a directed verdict motion. Apart from that, the

evidence shows Lyles–Gray failed to follow proper investigatory procedures when she refused to cooperate with Kennedy or Frazier after learning that her car contained stolen merchandise from a shoplifting.

We find the State presented sufficient evidence from which a jury can logically conclude Lyles–Gray committed the crimes of obstruction of justice and official misconduct.

**AFFIRMED.**

CURETON and CONNOR, JJ., concur.