OPINION OF THE COURT
Jones, J.
An indictment charging a Judge with official misconduct *661 under subdivision 2 of section 195.00 of the Penal Law is insufficient, and accordingly should have been dismissed on timely application, where that indictment, for the purpose of defining the duty "clearly inherent in the nature of his office” which allegedly was violated, only incorporates by reference the provisions of the Code of Judicial Conduct. Moreover, the disciplining of Judges for violation of ethical standards not involving independently criminal conduct has been reserved by the State Constitution to proceedings instituted before the present Commission on Judicial Conduct and prior to that before the Court on the Judiciary.
Appellant, a Suffolk County District Court Judge, was indicted on April 26, 1976 and charged with three counts of official misconduct in violation of section 195.00 of the Penal Law. That section provides:
"A public servant is guilty of official misconduct when, with intent to obtain a benefit or to injure or deprive another person of a benefit:
"1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or
"2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.”
Two counts of the indictment were dismissed by the court at the close of the People’s case. The remaining count, which was submitted to the jury, charged in pertinent part that appellant: "with the intent to obtain a benefit * * * knowingly refrained from performing a duty which is imposed upon her by law or is clearly inherent in the nature of her office, to wit, on December 24, 1974, in Suffolk County, in her capacity as District Court Judge, she improperly dismissed, for failure to prosecute, a Simplified Traffic Information received by * * * a personal friend, in violation of * * * the Code of Judicial Conduct, Canons 2 and 3.”[1] Submission of this count resulted in a hung jury. On retrial of this count a guilty verdict was returned. The Appellate Division affirmed appellant’s convic *662 tion without opinion. We now reverse and dismiss the indictment.
At issue is the permissibility of the enforcement of the provisions of the Code of Judicial Conduct by resort to criminal prosecution. During the course of the proceedings at the first trial, and again prior to the second trial, appellant moved to dismiss the indictment on the ground that an indictment which only charges violations of canons of judicial ethics cannot support a criminal charge of official misconduct — that the "Canons of Ethics cannot be substituted for the Penal Law”. The court denied appellant’s motion, concluding that "[ajssuming a specific mens rea, conduct in violation of the respective Canons constituting the code becomes a violation of law when it is done with intent to gain any benefit or advantage * * *. The inclusion by reference to * * * the Code of Judicial Conduct is accordingly appropriate”. We disagree.
Subdivision 2 of section 195.00 of the Penal Law condemns, and this indictment charges, a breach, with the requisite intent, of a duty that is either imposed by law or clearly inherent in the nature of the office. The only definition or description in the indictment of the duty in question, however, is by cross-reference to Canons 2 and 3 of the Code of Judicial Conduct.[2]
Section 195.00 of the present, revised Penal Law condensed more than 30 separate provisions in the former Penal Law dealing with offenses of malfeasance and nonfeasance by public servants, most of which were very narrow ones involving violations of specific duties by specified public officers (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 195.00). With a single exception,[3] there was no express proscription of judicial misconduct in any of the specific sections, although some of the sections of general application were phrased so broadly as to permit an argument that judicial misconduct would fall within the statutory embrace (e.g., former Penal Law, §§ 854, 1788, 1857). It does not appear, however, that any of these sections was ever used as the basis for proceedings against a Judge to enforce ethical standards or any duty not prescribed by statute.
There is no contention here that the official misconduct *663 with which appellant was charged involved her refraining from performing a duty "imposed upon her by law”. The contention is that she refrained from performing a duty "clearly inherent in the nature of her office”. The canonical provisions are then relied on to define duties inherent in the office.
 Our address to this contention begins with noting that "[i]t is for the legislative branch of a state or the federal government to determine, within state or federal constitutional limits, the kind of conduct which shall constitute a crime and the nature and extent of punishment which may be imposed therefor.” (Warton’s Criminal Law [14th ed, 1978], § 10, pp 31-32). Even by explicit provision the Legislature may not delegate the essentially legislative function of definition of a substantive criminal offense (People v Ryan, 267 NY 133; see People v Blanchard, 288 NY 145). In the present instance, however, there has not even been an attempted delegation by the Legislature, for it has neither incorporated nor otherwise adopted the provisions of the Code of Judicial Conduct. Here the attempt is by the District Attorney alone, unaided by any legislative enactment, to import a definition of judicial duty based on ethical standards initially promulgated by the American Bar Association and the New York State Bar Association and then incorporated by reference in the Rules of the Appellate Division, Second Department (§ 700.5, subd [a]; 22 NYCRR 700.5 [a]). While there can be no doubt of the authority of bar associations to promulgate enforceable ethical standards or of the Appellate Division to incorporate such standards in rules of court, neither the bar associations nor the Appellate Division is empowered to discharge the legislative responsibility to define the elements of a crime.
Moreover, the Code of Judicial Conduct and the Penal Law serve discrete, if in some respects complimentary, purposes. The Penal Law is designed to "give fair warning of the nature of the conduct proscribed * * * [and to] define the act or omission * * * which constitute^] each offense” (Penal Law, § 1.05, subds 2, 3). For duly proved violations the sanctions of the Criminal Law are imposed. By contrast, the provisions of the Code of Judicial Conduct were never so intended. Couched in the subjunctive mood, the code is a compilation of ethical objectives and exhortations for the violation of which recourse has traditionally been had to disciplinary rather than criminal proceedings. If in any in *664 stance the conduct proscribed by the canons also independently constitutes a criminal offense under the Penal Law (e.g., bribe receiving, Penal Law, § 200.12) then, of course, the sanctions of the Criminal Law are available and the coexistence of ethical impropriety would stand as no barrier to criminal prosecution. Taken alone, however, instances of ethical impropriety, although unquestionably to be condemned, provide no predicate for the imposition of criminal penalties.
In our State this distribution of jurisdiction for the enforcement of the Criminal Law on the one hand and the enforcement of the Code of Judicial Conduct on the other is expressly recognized in the provisions of our State Constitution. In section 22 of article VI of the Constitution (further implemented in article 2-A of the Judiciary Law) detailed and complete provision is made for the initiation, prosecution, determination and appeal of disciplinary proceedings against members of the judiciary — now through proceedings before the Commission on Judicial Conduct; prior to April 1, 1978 through proceedings before the Court on the Judiciary. We view the constitutional and statutory provisions for judicial disciplinary proceedings as a pre-emption with respect to the imposition of sanctions for the violation of ethical standards by Judges — except, of course, as to conduct which, irrespective of the provisions of the Code of Judicial Conduct, is expressly proscribed by the sections of the Penal Law. As to the latter, Judges as other persons are subject to criminal prosecution. In effect, in the performance of their judicial duties members of the judiciary, as distinguished from public servants in general, are exposed to the imposition of sanctions for misconduct undér either, or sometimes both, criminal prosecution (in the event the conduct in question is proscribed by the Penal Law) and disciplinary action (when the conduct is violative of ethical standards). If the particular misconduct transgresses both the Penal Law and the Canons of Ethics, prosecution may be initiated under criminal or disciplinary procedures, or both.
We find nothing in section 195.00 of the Penal Law which suggests that by the device of incorporation by reference a prosecutor may initiate and take charge of proceedings to enforce the Code of Judicial Conduct as such. To accept the proposition advanced by respondent District Attorney would be to countenance the institution of criminal proceedings for any alleged violation of the provisions of the code. We per *665 ceive no intention on the part of the Legislature to cloak the District Attorney with responsibility for compelling conformity with the Code of Judicial Conduct. Nor does it affect the outcome that section 195.00 requires an "intent to obtain a benefit or to injure or deprive another person of a benefit”. Most unethical conduct falls into the former category, or so it could be found.
Not only does consideration of the relevant provisions of our Constitution and statutes dictate the conclusion that we reach; the result comports with sound principle. As to conduct which falls short of legislative proscription, it. would be awkward and often unseemly for District Attorneys and the Commission on Judicial Conduct to jockey for prosecutorial priority or advantage. It is even more fundamental to recognize the special competence and expertise of the members of the commission— composed of Judges, lawyers and members of the public — to evaluate and judge the merit of complaints against members of the judiciary that do not involve criminal conduct and then, on a determination of guilt, to assess the appropriate penalty.
For the reasons stated, the provisions of the Code of Judicial Conduct which do not come within the ambit of one of the express proscriptions of the Penal Law and which have never been adopted by the Legislature may not be enforced by resort to criminal prosecution. The attempt to achieve this result by incorporation of code provisions in this indictment charging official misconduct under subdivision 2 of section 195.00 fails of accomplishment, and the indictment so drafted should have been dismissed as insufficient.
In view of our conclusion that the indictment must be dismissed, we do not reach or consider appellant’s other assertions of error, either as to the sufficiency of the indictment or as to the conduct of the trial.
Accordingly, the order of the Appellate Division should be reversed, and the remaining count of the indictment dismissed.

. The indictment also included a reference to section 14 of the Judiciary Law ("Disqualification of judge by reason of interest or consanguinity”). The trial court did not charge the jury with respect to that section. Both parties agree that such reference is inapposite, and no reliance is placed on it to sustain the indictment.

. The text of Canons 2 and 3 is set forth in the appendix to this opinion.

. Section 1876 — "Misdemeanor for judge, justice or magistrate to permit any but attorneys to practice in his court.”