STATE of Minnesota, Respondent,

v.

Camelia J. CASBY, Appellant.

No. C8–83–567.

Supreme Court of Minnesota.

May 18, 1984.

Michael F. Fetsch, St. Paul, for appellant.

Warren D. Chamberlain, Faribault, for respondent.

SIMONETT, Justice.

We affirm the misdemeanor conviction of appellant Camelia J. Casby for attorney misconduct in violation of Minn.Stat. § 481.071 (1982).[1]

On June 15, 1980, Peter Spedevick, who was driving after revocation of his driver's license, was arrested for speeding and littering (he had thrown a beer bottle and cigarette pack out of his car while being pursued). Peter falsely identified himself to the arresting officer as Ben Spedevick— Ben being Peter's brother. At his subsequent arraignment on June 30 and his pretrial hearing on September 9, 1980, Peter continued his deception. At the September 9 hearing before the County Court of Rice County, Peter, as Ben, pled guilty and fines were imposed. In late October 1980, Ben

discovered the convictions and advised the authorities of his brother's deception.

The State claims that defendant-appellant Camelia J. Casby, as Peter Spedevick's attorney, knew of her client's deceit and, while she did not appear at the court proceedings, she assisted or at least consented to the deception. The trial court heard the case against attorney Casby without a jury, acquitted her of two charges, but found her guilty of attorney misconduct. A three-judge district court panel affirmed the conviction. We granted Ms. Casby's petition for review.

I.

Appellant Casby's first contention is that the evidence is insufficient to support the trial court's finding that she knew Peter Spedevick used a false name with the Rice County authorities. We find the evidence sufficient.

The facts are these. The evening of June 15, 1980, Ms. Casby received a telephone call at her St. Paul home from Peter Spedevick, who was in the jail at Faribault. She had previously done legal work for Peter, knew about his license revocation, and recognized his voice. At the trial, Peter testified he said on the phone, "Hello, doll. This is Ben." Both the jailer and the arresting officer heard this said. Ms. Casby said she did not hear the name Ben. The trial court concluded that "it is reasonably possible that Defendant did not hear Spedevick identify himself as 'Ben.'"

At Peter's urging, Ms. Casby drove to Faribault that evening to arrange for Peter's release, since at the time it appeared he might also have a DWI charge. At the jail, Ms. Casby was given a form entitled "Release on Recognizance Agreement," which had been completed to show that "Spedevick, Benjamin Joseph," declared, among other things, that he resided at a certain St. Paul address (Peter's address), that the offense was "speed & littering," and that his birthdate was November 3,

---

1. Minn.Stat. § 481.071 (1982) provides in part: *"Misconduct by Attorneys.* Every attorney or counselor at law who shall be guilty of any

deceit or collusion, or shall consent thereto, with intent to deceive the court or any party, * * * shall be guilty of a misdemeanor * * *."

1950 (Ben's birthdate). The recognizance was signed "Ben Spedevick." Ms. Casby signed the form, opposite "Ben's" signature, but testified she did not notice the form used the name Ben Spedevick. Ms. Casby gave Peter, his girlfriend, and other members of his party a ride back to St. Paul. The trial court concluded that "[i]t is certainly likely that that discussion [on the ride back] would include examination of the tickets issued and discussion of what had occurred."

Ms. Casby testified that Peter, on the ride back home, said he would handle the two traffic tickets himself. Ms. Casby said she did not see and was not shown the tickets. She told Peter what her bill was for her evening's work and considered her services ended. Subsequently, on June 30, Peter, as Ben, appeared in court alone for his arraignment. He told the court he had an attorney but gave no name. On September 8, 1980, Peter called Ms. Casby. He said he had to appear in court for a pretrial hearing the next day and asked for her advice, stating he did not want to go to jail. Ms. Casby agreed to call the county attorney. Her telephone call was taken by the secretary of Steven Alpert, the assistant county attorney. Ms. Casby testified she asked to talk about the "Spedevick case." The secretary testified, however, that Ms. Casby specified "Ben Spedevick," and the secretary's telephone message slip, received as an exhibit, reads "Ben Spedevick." Later that day Mr. Alpert returned Ms. Casby's call and negotiated an arrangement whereby Mr. Alpert would recommend a minimal fine and no jail sentence if the defendant pled guilty. During these telephone negotiations, Ms. Casby testified she first referred to her client as Mr. Spedevick, but then "I know I called him Peter throughout the conversation." Mr. Alpert could not recall this. Mr. Alpert did request, however, that Ms. Casby furnish a letter, to be delivered to him the next day by the client, summarizing the negotiations. The telephone conversation ended about 5 p.m. Ms. Casby's secretary having left, Ms. Casby typed the letter herself. Throughout the letter defendant is referred to as "Mr. Spedevick." The next morning, Ms. Casby gave two copies of the letter, signed by her, to Peter, who went to the court hearing in Faribault by himself. Peter gave the copies of the letter to Mr. Alpert, pled guilty as Ben, and received fines for speeding and littering.

Ms. Casby claims that not until September 18, 1980, did she learn, in connection with another matter, that Peter had a brother. On October 23, Mr. Alpert called Ms. Casby on the phone. He said that there was a person in his office who "claims to be Ben Spedevick and he is not the same person you signed out." Ms. Casby replied that she had signed out Peter Spedevick. It developed that Peter and Ben do not get along and each previously has used the other's name in various predicaments. Pointing out that she had no reason to participate in any deceptive scheme of Peter's—indeed, every reason not to—Ms. Casby claims that through her distraction and at most negligence, she, too, was deceived by Peter.

The trial court found "beyond a reasonable doubt that the Defendant had actual knowledge of Spedevick's false use of his brother's name at the time she called Alpert's office to discuss the charges against Spedevick * * *." The trial court noted that the only direct evidence for this was the testimony of Mr. Alpert's secretary that Ms. Casby asked to discuss the "Ben Spedevick" case, but that this testimony, taken in light of the substantial circumstantial evidence, required a finding that the defendant knew of the deceit. The court pointed to the two discussions defendant had with Peter and the letter she wrote on his behalf as circumstantial evidence tending to show knowledge on her part. The district court panel agreed with the trial court, although it would have given even greater weight to the testimony of Mr. Alpert's secretary.

Ms. Casby argues that because her conviction is based on circumstantial evidence which could equally support an acquittal, she is entitled to an acquittal.

Indeed, where a criminal conviction is based on circumstantial evidence, that evidence must lead directly to the guilt of the accused so to exclude, beyond a reasonable doubt, any reasonable conclusion other than guilt. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980). Nonetheless, on appeal this court must view all evidence, including circumstantial evidence, "in a manner most favorable to the state and assume that the [trial court] disbelieved contradictory testimony." *State v. Cox*, 278 N.W.2d 62, 65 (Minn.1979). Thus, this court must draw from circumstantial evidence all reasonable inferences which tend to support the conviction. Viewed in this light, the evidence amply supports the conviction of Ms. Casby.

## II.

■ Appellant next argues, assuming arguendo that she had been aware of her client's deceit, she could not be found guilty of assisting in or consenting to the deceit because she was precluded from disclosing her client's true identity to the authorities by reason of the attorney-client privilege, the code of professional ethics, and her client's fifth and sixth amendment constitutional rights. The district court panel rejected each of these arguments, as do we.

The fact that the person representing himself as Ben was actually Peter was not, for Ms. Casby, information protected by the attorney-client privilege. Ms. Casby knew Peter before she agreed to represent him as a client at the Faribault jail. When she learned her client was perpetrating a fraud on the judicial system, she had a duty, as the district court panel put it, "to advise against the continuation of such action, and if the client persisted, attempt to withdraw from the case. Even if withdrawal had then become impossible, she should have been careful to do nothing which in any way aided her client's deception." ABA Standard, *The Defense Function* § 7.7; *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir.1978). She made no effort, however, to dissuade her client from per-

sisting in his fraud. Indeed, in the circumstances, it is difficult to see how Ms. Casby could have continued to represent Peter, even under the most passive conditions, without the danger of assisting the client's fraudulent conduct and preserving false evidence in violation of DR 7–102(A). But here appellant did more. She knowingly undertook plea negotiations with the authorities based on the deceit including the writing of a letter to the authorities confirming those negotiations. Under DR 4–101(B), an attorney is not to reveal the secrets and confidences of a client, but this rule is tempered by subsection (C)(2) which allows disclosures permitted by other disciplinary rules. There are times when a client places his or her attorney in a situation where the attorney's ethical obligation to withdraw or to disclose is difficult to discern, but in this instance, plainly, the attorney is not excused by the Code of Professional Responsibility for doing what she did.

Lastly, appellant argues that if she had withdrawn she would have violated the client's constitutional right to counsel under the sixth amendment, and that if she had disclosed her client's true identity she would have violated the client's privilege against self-incrimination under the fifth amendment. She argues that the client had already committed the offense of obstructing legal process before he engaged her. True, but it is also true that the client was embarked on a course of continuing deceit. The sixth amendment does not expect an attorney to assist a client in furthering fraud on the court. Nor do we see how Ms. Casby, with no attorney-client privilege to assert, could refuse to divulge Peter Spedevick's true identity on the basis of Peter's fifth amendment privilege not to be a witness against himself. *See Fisher v. United States*, 425 U.S. 391, 397–98, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39 (1976).

Affirmed.