STATE of Minnesota, Respondent,

v.

**John Owen ERICKSON, Appellant.**

**No. C5–84–570.**

Court of Appeals of Minnesota.

Feb. 19, 1985.

Review Denied May 1, 1985.

Hubert H. Humphrey, III, State's Atty. Gen., Alan Mitchell, St. Louis County Atty., Mark Rubin, Asst. Co. Atty., Duluth, for respondent.

Ronald I. Meshbesher, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

SEDGWICK, Judge.

Defendant was convicted of two counts of coercion in violation of Minn.Stat. § 609.-27, subd. 1(3) and (5) (1982). He appeals his conviction and an order denying a motion for new trial or judgment of acquittal. We affirm.

## FACTS

Appellant John Erickson, 39, was the executive director of the Minnesota Arrowhead District Council 96 during the times relevant to this case. Council 96 is a union representing city and county employees.

Frank Mainella, 55, has been a lifelong employee of Duluth's Water and Gas Department. He has little formal education. He obtained the position of foreman by working his way up through the ranks in the department. He works evenings and weekends for a local laundromat business.

Mainella owned 160 acres with a gravel pit on it. In 1979, Erickson told Mainella that he wanted the first opportunity to purchase the land. Mainella told him four others already expressed an interest in buying it.

Erickson visited Mainella a second time while Mainella was working with his crew in the fields. This time he insisted Mainella get in his car. He told Mainella if he did not sell the land to him he would "make it hard for him." He showed Mainella a gun in his glove compartment. Mainella said he felt "scared and uncomfortable."

Mainella sold the property to Erickson. After the closing Erickson asked Mainella for a loan of $2,000. Mainella testified that he gave him the money because Erickson

gave him a hard luck story and he felt sorry for him.

Shortly after Mainella gave Erickson the first $2,000, Erickson asked for another $2,000. Mainella initially refused the request, but shortly thereafter withdrew $1,100 in cash and gave it to Erickson. Mainella testified that he did not feel threatened.

Nine months after this Erickson asked for and received another $600. Less than a year later Mainella gave him another $500, then $400 upon request. When his savings account had been depleted, Mainella took out a loan to give Erickson another $1,000 in cash he requested.

Mainella testified that he believed Erickson's promise that all the money would be paid back if there was a profit from the sale of the gravel pit. But when Erickson continued to approach Mainella to discuss work problems and to ask for money, his trust in Erickson deteriorated.

Mainella testified that his supervisors continually approached him about "little picky things" at work. He testified that he knew Erickson was aware of this and as union president he might "have something over him." Upon request, Mainella loaned Erickson another $1,000 in hopes of avoiding future problems.

About a year later, Erickson called Mainella and asked to meet him because he thought Mainella was in trouble for padding his overtime. Erickson told Mainella that there would be a grand jury investigation and that Mainella would lose his pension. He told Mainella that he could take care of the matter if Mainella would pay him $1,600 that day. Mainella told him he could not get the money until the following Monday.

Instead of paying Erickson, Mainella went to the police. The police asked him to call Erickson to arrange a meeting. This call was placed from the police department and taped without Erickson's knowledge.

Mainella also visited Erickson's office with a police transmittor taped to his chest.

Erickson did not know the conversation was being taped.

The police then asked Erickson for an explanation of the $7,200 allegedly coerced from Mainella. He denied coercing any money. A jury found Erickson guilty of two counts of coercion. The judge sentenced him to perform 200 hours of community service and to pay $7,200 in restitution.

## ISSUES

1. Was the appellant prejudiced by the omission in the indictment of an allegation as to the amount of money obtained by coercion?

2. Did the trial court err in admitting tape recorded conversations of appellant?

3. Is the evidence sufficient to justify the verdict?

## ANALYSIS

1. Appellant was not prejudiced by the indictment's failure to specify the dollar amount Erickson allegedly obtained through coercion. The indictment clearly indicated the charges were for felonies, not misdemeanors. It also specifically enumerated the statutory provisions allegedly violated.

Furthermore, Minn.R.Crim.P. 17.06, subd. 1, provides:

Defects in Form. No indictment, complaint, or tab charge shall be dismissed nor shall the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matters of form which does not tend to prejudice the substantial rights of the defendant.

In addition, appellant did not object to the form of the indictment until after the trial. Because appellant knew the gravity of the charges against him and the actual amount claimed, he was not prejudiced by the omission of the dollar amount in the indictment. *State v. Hagen*, 361 N.W.2d 407 (Minn.Ct.App.1985).

2. Appellant claims the trial court erred in admitting tape recorded conversa-

tions he had with Mainella and two police officers investigating Mainella's complaint because he (appellant) did not know the conversations were being recorded.

In *State v. Bellfield*, 275 N.W.2d 577 (Minn.1978) the court said:

> Because one of the parties to these conversations voluntarily consented to the taping of these calls, no warrant was required by either the federal or state statutes relating to the interception and recording of telephone communications, and no Fourth Amendment issue is presented.

*Id.* at 578, citing *United States v. White*, 401 U.S. 745, 191 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Since Mainella consented to the taping of his conversation with appellant, appellant must lose on this issue.

■ 3. Lastly, appellant claims the evidence is insufficient to justify the conviction. There is no merit to this contention.

### DECISION

We affirm the trial court's judgment of conviction.