STATE of Minnesota, Appellant,

v.

Emanuel A. SERSTOCK, Respondent.

No. C3–86–264.

Court of Appeals of Minnesota.

July 22, 1986.

Review Granted Sept. 10, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Mary Magnuson, Spec. Asst. Atty. Gen., St. Paul, for appellant.

David G. Roston, Segal & Roston, Minneapolis, for respondent.

Heard, considered and decided by SEDG-WICK, P.J., and PARKER and FORSBERG, JJ.

## OPINION

PARKER, Judge.

The State of Minnesota appeals from an order dismissing an indictment charging three counts of misconduct by a public officer arising out of respondent Emanuel Serstock's alleged "ticket fixing." We affirm in part, reverse in part and remand for trial.

## FACTS

Serstock was the Deputy City Attorney for the City of Minneapolis from 1975 until October 1985. During that time, he had complete supervisory authority over the city's prosecution of criminal offenses. As a result of alleged "ticket fixing" activities, Serstock was indicted by a grand jury for violating the public officer misconduct statute, Minn.Stat. § 609.43(2) (1984). Count I of the indictment alleges that Serstock, while financially indebted to Erwin Dauphin, dismissed or wrongfully delayed numerous parking tickets and moving violations as a personal favor for Dauphin.[1]

Count II alleges that Serstock dismissed or wrongfully delayed numerous moving violations as a personal favor for Minneapolis businessman Stephen Wallack, to whom Serstock was also financially indebted. These tickets had been issued to Wallack's family and employees.

Count III alleges that Serstock dismissed, delayed or wrongfully manipulated numerous tickets for moving violations which occurred outside the City of Minneapolis, without informing or obtaining the permission of the city attorney of the city in which the offense occurred.

All three counts allege that Serstock knew these actions were in excess of his lawful authority simply because they were "flagrant violations" of the Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney. In addition, count III alleges that Serstock knew his actions involving tickets issued outside Minneapolis exceeded his "statutory authority."

Serstock moved to dismiss the indictment on the grounds that the facts alleged did not constitute offenses and the language of the indictment lacked sufficient specificity. The trial court granted the motion on both grounds and dismissed the indictment.

## ISSUES

1. Is this appeal taken from an appealable order?

2. Did the trial court err in concluding that the indictment failed to state an offense?

3. Is the language of the indictment sufficient under Minnesota law?

## DISCUSSION

### I

Minn.R.Crim.P. 28.04, subd. 1(1), provides that the State may appeal of right from *any* pretrial order of the trial court *except* an order dismissing a complaint for lack of probable cause to believe the defendant has committed an offense or

---

1. Dauphin was a former Minneapolis political activist who, at the time of the grand jury investigation, was serving time in federal prison for tax evasion.

an order dismissing a complaint pursuant to Minn.Stat. § 631.21 * * *.

*Id.* (emphasis added). An order dismissing an indictment does not fall within either of the exceptions to rule 28.04, subd. 1(1), and is therefore appealable of right by the State.ʼ *Cf. State v. Grose,* 387 N.W.2d 182 (Minn.Ct.App.1986).

## II

Minn.Stat. § 609.43(2) (1984) prohibits a public officer or employee, while in his capacity as such officer or employee, from performing

> an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity; * * *.

*Id.* The State's theory is that the Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney may be used to define the "lawful authority" which may not be "exceeded" by a public officer. The State therefore argues, both in its brief and at oral argument, that a violation of either of these codes of conduct by a Minneapolis city attorney is *ipso facto* a violation of section 609.43(2).

The statute does not specify any particular sources of "law" to which a court should look in determining whether a public employee exceeded his "lawful authority." Nor is there an abundance of Minnesota case law construing the statute.[2]

In *State v. Wedge,* 24 Minn. 150 (1877), the Freeborn County Attorney was indicted for misbehavior and malfeasance in office under Gen.Stat. chap. 91, § 8 (1866). The indictment alleged that the county attorney aided the escape of a defendant in custody in Freeborn County by approving an unauthorized bail bond and directing the sheriff to release the defendant so that he could not be arrested on another complaint which was issued against him in another county. Upon the county attorney's demurrer to the indictment, the Minnesota Supreme Court stated:

How a defendant * * * shall be let to bail, *is prescribed by the statute.* It gives no authority in the matter to the county attorney. * * * The approval of the bond, and direction to the officer to release the prisoner, were beyond the [county attorney's] official authority.

*Id.* at 153 (emphasis added). *Wedge* therefore makes clear that a statute, even a non-penal statute, can be utilized in determining whether a public officer exceeded his "lawful authority." *See also State v. Winne,* 12 N.J. 152, 96 A.2d 63 (1953) (county attorney indicted for malfeasance in office for failing to enforce statute requiring county attorney to "use all reasonable * * * diligence for the detection, arrest, indictment and conviction of [criminal] offenders * * * ").

Other jurisdictions have held that the lawful authority and official duties of a public officer may also arise "out of the very nature of the office" as determined by the courts. *State v. Weleck,* 10 N.J. 355, 366, 91 A.2d 751, 756–57 (1952); *State v. Hess,* 279 S.C. 14, 20, 301 S.E.2d 547, 550–51 (1983). Thus, the "lawful authority" of a public officer may also be determined by "obligations imposed by the common law * * * and assumed by [public officers] as a matter of law upon their entering public office." *Weleck,* 10 N.J. at 368, 91 A.2d at 758 (emphasis omitted) (quoting *Driscoll v. Burlington Bristol Bridge Co.,* 8 N.J. 433, 474–76, 86 A.2d 201, 221 (1952)).

However, there is disagreement as to whether alleged violations of particular canons of ethical conduct by public officers can, without more, support a charge of official misconduct. In *People v. La Carrubba,* 46 N.Y.2d 658, 389 N.E.2d 799, 416 N.Y.S.2d 203 (1979), which involved the prosecution of a judge for official misconduct, the New York Court of Appeals held that an indictment which attempted to define the duties "inherent in the nature of [the judicial office]" solely by reference to the Code of Judicial Conduct was insuffi-

---

**2.** *State v. Andersen,* 370 N.W.2d 653 (Minn.Ct. App.1985), deals with the constitutional definiteness of section 609.43(2), not the sources of "law" to be utilized in determining whether a public officer exceeded his lawful authority.

cient. *Id.; see also State v. Perez,* 464 So.2d 737, 741, 743–44 (La.1985) (malfeasance charge alleging bad-faith prosecution without probable cause by district attorney dismissed as not charging a crime because "there is no provision of law that defines or limits the type of cases" which may be prosecuted, even though Code of Professional Responsibility prohibits prosecutor from instituting charges which are not supported by probable cause).

In contrast, the court in *People v. Weber,* 133 Ill.App.3d 686, 88 Ill.Dec. 769, 479 N.E.2d 382 (1985), while dismissing an indictment for official misconduct against a county attorney for failure to state an offense, indicated that the charge would have been sufficient had it alleged a violation of the Code of Professional Responsibility. *Id.* 133 Ill.App.3d at 689, 88 Ill.Dec. at 771, 479 N.E.2d at 384.

Here, under the State's theory, any violation of the Code of Professional Responsibility by a public attorney would constitute action beyond his "lawful authority" and could subject the attorney to criminal penalties under section 609.43(2). We believe that such a result was not intended by the legislature because it would disrupt the supreme court's power to discipline attorneys and would distort the purpose of the Code of Professional Responsibility.

Under our constitution, the power to discipline attorneys rests entirely with the Minnesota Supreme Court. *In re Daly,* 291 Minn. 488, 490, 189 N.W.2d 176, 178–79 (1971); Rules on Lawyers Professional Responsibility, Rule 12 (1976). If a charge of official misconduct against a public attorney can be grounded solely in an alleged violation of the code, then the Attorney General and the county attorney would have the power to enforce the Code of Professional Responsibility. Certainly the legislature did not intend prosecutions under section 609.43(2) to so invade or intrude upon this exclusive "field of the judiciary."

*In re Disbarment of Ithamar Tracy,* 197 Minn. 35, 43–44, 266 N.W. 88, 92 (1936).

Furthermore, pursuant to Minn.Stat. § 480.05 (1984), the Minnesota Supreme Court adopted the ABA Code of Professional Responsibility as the standard of professional conduct of attorneys in this state. *See* Order of Minnesota Supreme Court (August 4, 1970), *reprinted in* Minn. Rules of Court, at 772 (West 1985). The supreme court's order provided that

> any attorney violating any of the disciplinary rules as embodied in the Code of Professional Responsibility *shall be subject to discipline or disbarment in the manner provided by rules of this court.*

*Id.* (emphasis added). Violations of the code were therefore intended to subject an attorney to disciplinary proceedings, not criminal charges. There is no indication the legislature envisioned that an alleged violation of the disciplinary rules promulgated by the supreme court, without more, could form the basis of a criminal charge of official misconduct against a public attorney.

Moreover, the violation of particular disciplinary rules by a public attorney may be no more harmful to the public than a violation of the same rule by a private attorney. Yet under the State's theory, a public attorney may be charged with official misconduct. For example, the public is not harmed to a greater extent when a public attorney violates disciplinary rule 1–103(A) [3] compared to when a private attorney violates the same rule. The harm to the public appears equivalent, but the public attorney may be charged with official misconduct. The State's theory, therefore, could pose serious equal protection problems.

■ Accordingly, we hold that an indictment which simply alleges a public attorney violated the Code of Professional Responsibility does not state an offense under section 609.43(2) because the code cannot

---

**3.** This rule states that "[a] lawyer possessing unprivileged knowledge of a violation [of a disciplinary rule by another attorney] shall report such knowledge to [the Lawyers Professional Responsibility Board]." Code of Professional Responsibility DR 1–103(A).

be used to determine the "lawful authority" of a public attorney.

Similarly, but for more fundamental reasons, the allegation that Serstock violated the Ethics Code of the Minneapolis City Attorney cannot, by itself, support a charge of official misconduct against a Minneapolis city attorney. The "lawful authority" specified in section 609.43(2) may, of course, refer to a city ordinance. It may even refer to a properly promulgated rule or regulation of an administrative agency because an agency exercising its rule-making power gives expression to legislative policy and thus performs a quasi-legislative function. *See People v. Samel*, 115 Ill. App.3d 905, 910, 71 Ill.Dec. 738, 742, 451 N.E.2d 892, 896 (1983).

The city's "Ethics Code," however, is not the product of any type of legislative function; it is simply the conditions of employment which are required of employees by their employer, the city. This "code" was drafted by the Minneapolis City Attorney to apply to all "full and part time classified or unclassified employees of the City of Minneapolis * * * appointed by the City Attorney." It is essentially the employment manual of a single employer specifying the conduct that the employer requires of its employees. As such, it is not "law" in even a generic sense and therefore may not be used to determine whether a public attorney exceeded his "lawful authority" under section 609.43(2).

■ An examination of the conduct which would become criminal under the State's theory demonstrates the impossibility of its position. The Ethics Code of the Minneapolis City Attorney prohibits city attorneys from giving "rude" or "discriminatory treatment" to any person; they may not "lose impartiality" or "impede government efficiency." Attorney employees cannot engage in any other employment without giving notice, nor "accept *any* gift." They cannot engage in any "infamous, immoral or notoriously disgraceful conduct," make public comment on any matter of "office policy" or lobby for or against any proposed legislation. We do not think the legislature intended such actions by public attorneys to be crimes under section 609.-43(2). In addition, we are unwilling, in this instance, to rely upon prosecutorial discretion as the sole safeguard between public attorneys and a multitude of dubious criminal charges. We hold that an allegation that a public attorney simply violated an "ethics code" promulgated by his employer does not state a criminal offense under section 609.43(2).[4]

Count III of the indictment, however, alleges more than that Serstock exceeded his lawful authority simply by violating the above ethical codes; it also alleges that Serstock, in violation of his *statutory* authority, dismissed, delayed or manipulated speeding tickets issued outside the City of Minneapolis.

■ Under Minn.Stat. § 488A.01, subd. 6 (1984), the municipal court of Hennepin County has jurisdiction over traffic offenses occurring in Hennepin County. Minn.Stat. § 488A.10, subd. 11, specifies who may prosecute such offenses in municipal court:

[T]he attorney of the municipality *in which the violation is alleged to have occurred has charge of the prosecution* of all violations of the state laws, including violations which are gross misdemeanors, and municipal charter provisions, ordinances, rules and regulations triable in the municipal court and shall prepare complaints for the violations.

---

**4.** The dissent argues that the indictment's reference to the Code of Professional Responsibility and the City Attorney's Ethics Code was simply surplus language and, apparently, that the indictment states a violation of the duties of a prosecutor under the common law. This argument was never presented to the trial court. Proper appellate procedure dictates that we address only those arguments and theories which were advanced in the trial court. *Cf. State v. Mendoza*, 297 N.W.2d 286, 288 (Minn.1980); *Security Bank of Pine Island v. Holst*, 298 Minn. 563, 215 N.W.2d 61 (1974) (case will be reviewed in accordance with theory in which it was pleaded and decided).

*Id.* (emphasis added). Under this statute, Serstock possessed only the authority to prosecute traffic offenses which occurred inside the City of Minneapolis. By alleging that Serstock interfered with prosecutions for moving violations which occurred outside Minneapolis, the indictment stated an offense, since it charged Serstock with exceeding his statutory authority under section 488A.10, subd. 11, and hence his "lawful authority" under section 609.43(2). We therefore hold that the part of count III which alleges that Serstock exceeded his lawful authority in dismissing tickets issued outside Minneapolis states an offense under section 609.43(2).

### III

■ In light of our ruling in part II, we must determine whether the language of count III was sufficiently specific under Minnesota law.[5] Serstock argues that count III is insufficient because it does not inform him which tickets he allegedly manipulated, the precise number of tickets, or the jurisdictions in which the tickets were issued.

The essential function of an indictment is to apprise the defendant of the charge for which he is being tried. *State v. Clark,* 270 Minn. 538, 551, 134 N.W.2d 857, 866–67 (1965). An indictment must contain "a written statement of the essential facts constituting the offense charged." Minn. R.Crim.P. 17.02, subd. 2. Finally, the act charged as the offense must be clearly and concisely set forth with sufficient certainty to enable the court to pronounce judgment. Minn.Stat. § 628.18 (1984).

Count III of the indictment alleges that Serstock, in his capacity as Deputy City Attorney for the City of Minneapolis, dismissed or manipulated "numerous" tickets for moving violations issued outside the City of Minneapolis, without the consent of the city attorneys in those jurisdictions,

and that such conduct exceeded Serstock's "statutory authority." Since the misconduct results from Serstock's interference with prosecutions over which he had no authority under section 488A.10, subd. 11, the "essential facts" necessary to constitute the elements of the charged offense are present in count III. *See State v. Oman,* 265 Minn. 277, 281, 121 N.W.2d 616, 620 (1963).

It is not essential that the indictment state which jurisdictions the tickets were in or which "responsible city attorneys" were involved—those facts do not constitute elements of the offense. We agree that it would certainly have been preferable to allege the approximate number of "extrajurisdictictional" tickets Serstock allegedly manipulated. However, we do not think this lack of specificity has prejudiced him,[6] since he can engage in pretrial discovery. He has already received the grand jury transcripts, exhibits, investigation reports and official documents.

While it is true that the bill of particulars has been abolished, the information supplied by a bill of particulars may be obtained by discovery under Minn.R.Crim.P. 9.01. *See* Minn.R.Crim.P. 17.02, subd. 4, comment. The availability of discovery to supplement the essential facts of an indictment was thus clearly intended by the Rules of Criminal Procedure. *See also State v. Becker,* 351 N.W.2d 923, 926–27 (Minn.1984) (defendant not prejudiced by complaint which failed to state specific time period in which multiple criminal acts occurred because defendant availed herself of discovery opportunities which revealed all acts involved).

We hold that the allegations contained in count III of the indictment sufficiently apprise Serstock of the charge that he exceeded his statutory authority in violation of section 609.43(2).

---

5. Since we have held that Counts I and II did not state offenses, we need not rule on whether the language of those counts was technically sufficient under Minnesota law.

6. A motion to dismiss an indictment may be made when the indictment "does not substantially comply with the requirements prescribed by law to the prejudice of the substantial rights of the defendant * * *." Minn.R.Crim.P. 17.06, subd. 2(2)(a).

## DECISION

The order dismissing counts I and II of the indictment is affirmed. We also affirm the order dismissing count III to the extent count III purports to charge an offense under section 609.43(2) by alleging violations of the Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney. However, that part of count III which alleges that Serstock exceeded his statutory authority does state an offense under section 609.43(2) and is technically sufficient. Serstock may be tried on count III under this theory.

Affirmed in part, reversed in part and remanded for trial.

SEDGWICK, Judge (dissenting).

I respectfully dissent. The questions before us are essentially (1) Does Minn.Stat. § 609.43(2) embrace conduct other than that specifically prohibited by statute? and (2) May violations of a city's ethics manual, incorporating ethical codes of a lawyer's professional responsibility, be the source of a claim that a prosecutor exceeded lawful authority and committed misconduct? I would answer both questions in the affirmative.

In dismissing the indictments for failure to state an offense, the trial court stated that only the legislature can declare specific conduct criminal offenses and that violations of the code of professional ethics cannot be the basis for criminal charges unless that behavior is specifically prohibited by statute. The indictments read:

*Count I: Misconduct of Public Officer or Employee*

From on or about October, 1982, through on or about July, 1985, in the City of Minneapolis, County of Hennepin, defendant in his capacity as Deputy City Attorney for the City of Minneapolis, did intentionally perform acts which he knew to be in excess of his lawful authority: to-wit: Defendant dismissed numerous parking tickets and dismissed, compromised, delayed or otherwise wrongfully manipulated the disposition of numerous tickets for moving violations as personal favors for Erwin Dauphin, to whom he was at such time financially indebted, with surrounding circumstances causing said acts to be flagrant violations of the Lawyer's Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney.

*Count II: Misconduct of Public Officer or Employee*

From on or about October, 1982, through on or about July, 1985, in the City of Minneapolis, County of Hennepin, defendant in his capacity as Deputy City Attorney for the City of Minneapolis, did intentionally perform acts which he knew to be in excess of his lawful authority: to-wit: Defendant dismissed, compromised, delayed or otherwise wrongfully manipulated the disposition of numerous tickets for moving violations as personal favors for Stephen Wallack, to whom he was at such times financially indebted, with surrounding circumstances causing said acts to be flagrant violations of the Lawyer's Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney.

*Count III: Misconduct of Public Officer or Employee*

From on or about October, 1982, through on or about July, 1985, in the City of Minneapolis, County of Hennepin, defendant in his capacity as Deputy City Attorney for the City of Minneapolis, did intentionally perform acts which he knew to be in excess of his lawful authority: to-wit: As favors to persons with whom he had direct or indirect personal or financial connections, defendant dismissed, compromised, delayed, or otherwise manipulated the disposition of numerous tickets for moving violations which occurred outside the City of Minneapolis, without possessing the informed authority of the responsible city attorney, and with surrounding circumstances causing said acts to both exceed defendant's statutory authority and to be flagrant violations of the Lawyer's Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney.

The indictment identified the basis for acts done "in excess of [Serstock's] lawful authority" as prohibitions contained in the Lawyer's Code of Professional Responsibility and similar provisions in the Minneapolis City Attorney Code of Public Service Ethics Manual.

The disciplinary rules of the Lawyer's Code applicable to the ticket fixing allegations include the following:

DR 1–102. *Misconduct*

(A) A lawyer shall not:

    \*    \*    \*    \*    \*    \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 8–101. *Action as a Public Official*

(A) A lawyer who holds public office shall not:

    \*    \*    \*    \*    \*    \*

(3) Accept any thing of value from any person when the lawyer knows or it is obvious that the offer is for the purpose of influencing his action as a public official.

DR 9–101. *Avoiding Even the Appearance of Impropriety*

    \*    \*    \*    \*    \*    \*

(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official.

The city attorney's Ethics Manual, effective April 26, 1976, is intended to "eliminate conflicts of interest in public office, improve standards of public service, and promote and strengthen the faith and confidence of the people of Minneapolis in their government." Minneapolis City Attorney Code of Public Service Ethics Manual § 5.2. Even the appearance of impropriety shall be scrupulously avoided. *Id.* at § 5.3. The code is an official document of the city attorney's office, prescribing ethical requirements and behavior of Minneapolis city attorneys. The city attorney's code incorporates some of the broader mandates of the Lawyer's Code of Professional Responsibility, but is more specific. Provisions of the city attorney's code applicable to respondent's conduct include prohibitions against:

a. Using public office for private gain.

b. Giving discriminatory treatment to any person.

*Id.* at § 9.3.

Section 10 of the manual deals with conflicts of interest:

*10.1* A conflict of interest exists whenever the performance of the official duties of a regular or special appointee has or appears to have a direct and predictable effect upon the private interest of such appointee or of the appointee's spouse, child, parent, brother, sister or any person, partnership, firm, corporation or other organization with which he/she is associated financially. For example, a conflict of interest exists whenever official duties require a regular or special appointee to take a position that adversely affects his/her private interests. Private interests include special benefits, privileges, exemptions or advantages, pecuniary or otherwise.

*10.2* No regular or special appointee shall permit a conflict of interest, as defined in Section 10.1, to exist.

Finally, section 11.1 generally prohibits city attorneys from soliciting or accepting any "compensation, gift, gratuity, favor, entertainment, *loan,* or any other thing of monetary value." (Emphasis added.)

Former Anoka County Attorney Robert Johnson testified before the grand jury as an expert on the prosecutor's function and the limits placed on the prosecutor. Johnson was county attorney for 32 years and served on a national committee that established prosecutorial standards and goals.

Johnson stated that prosecutors must be beyond reproach because the prosecutor is the principal official who administers and maintains the integrity of the criminal jus-

tice process. He testified that ethical codes pertaining to conflicts of interest and avoiding the appearance of impropriety apply more so to prosecutors than to private attorneys. Johnson also stated that it is unprofessional conduct to exceed a prosecutor's discretion and that a prosecutor has no lawful authority to engage in unprofessional conduct.

We recently discussed the phrase "lawful authority" in *State v. Andersen*, 370 N.W.2d 653 (Minn.Ct.App.1985), where we affirmed a mayor's conviction of misconduct of a public official under Minn.Stat. § 609.43(2). We stated:

> The term "lawful authority" derives its meaning from a set of rules not contained in the official misconduct statute. The statute, however, does not leave a judge or jury with unrestrained discretion to define a crime. The lawful authority of the public officers of this State is not so poorly defined that, as a general principle, public officials, judges and juries are unable to determine the propriety of a public officer's actions.
>
> \*     \*     \*     \*     \*     \*
>
> In addition, actions are "forbidden by law" under section 609.43(2) in the generic sense. There does not have to be a particular penal statute which forbids Andersen's alleged conduct in order for her to be prosecuted under section 609.43(2). What was illegal for Andersen to do in her official capacity as mayor is not so indefinite that a legitimate argument can even be made that she could legally threaten a citizen of the town she governs and then seek to interfere with an investigation of her threats. The ordinary citizen could understand that section 609.43(2) clearly encompasses her alleged conduct.
>
> \*     \*     \*     \*     \*     \*
>
> Sometimes generalizations must be used in regulations which apply to an array of public employees because of the impracticality and difficulty of phrasing the regulations more precisely.

*Id.* at 662–63 (citations omitted).

Read literally, the statute at issue seems to cover conduct not otherwise proscribed by criminal statutes, as *Andersen* states. The statute includes the phrase "for which no other sentence is specifically provided by law," as well as a prohibition against "an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity."

Respondent relies on the general rule of interpretation that penal statutes are strictly construed. *State v. Corbin*, 343 N.W.2d 874 (Minn.Ct.App.1984). However, this does not mean that only the narrowest possible construction must be adopted in disregard of the purpose of the statute. *United States v. Bramblett*, 348 U.S. 503, 510, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955); *State v. Tronca*, 84 Wis.2d 68, 80, 267 N.W.2d 216, 221 (1978).

In New Jersey, the common law crime [1] of official misconduct was recently codified. N.J.S.A. 2C:30–2. Both before and after the codification in 1979, the New Jersey courts gave a broad interpretation to official misconduct. In *Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 474–75, 86 A.2d 201, 221, *cert. denied*, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), the court discussed the duties of public officers. The court held that they are "under an inescapable obligation to serve the public with the highest fidelity," that "they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity," and that "[t]hey must be impervious to corrupting influences and they must transact their business frankly and openly." *Id.* (citations omitted). These obligations are imposed on public

---

1. Common law crimes are abolished in Minnesota and no act or omission is a crime unless statutorily created. Minn.Stat. § 609.015, subd. 1 (1984). Section 609.43(2) apparently is the statutorily created replacement for the common law crimes of non-feasance, misfeasance and malfeasance in public office. *See State v. Winne*, 12 N.J. 152, 163, 96 A.2d 63, 68 (1953).

officers by the common law and are "essential to the soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign." *Id.* at 476, 86 A.2d at 222 (citation omitted).

In *State v. Weleck,* 10 N.J. 355, 369, 91 A.2d 751, 758 (1952), the New Jersey court upheld an indictment against a prosecutor for misconduct recognizing that public officers cannot divorce themselves from basic moral principles. *See State v. Winne,* 12 N.J. 152, 96 A.2d 63 (1953). The *Winne* court quoted from 1 Burdick, *Law of Crime* 388:

> Misconduct in office, or 'official misconduct,' means, therefore, any unlawful behavior in relation to official duties by an officer intrusted in any way with the administration of law and justice, or, as otherwise defined, any act or omission in breach of a duty of public concern, by one who has accepted public office.

*Id.* 12 N.J. at 176, 96 A.2d at 75.

More recently, in *State v. Stevens,* 203 N.J.Super. 59, 495 A.2d 910 (N.J.Super. Ct.Law Div.1984) the court, in dealing with misconduct of a police officer for conducting strip searches, stated that the "charge of misconduct in office may be sustained *without proof of a criminal act.*" *Id.* 203 N.J.Super. at 68, 495 A.2d 915 (emphasis added).

The rationale of the New Jersey cases was expressly adopted by the South Carolina Supreme Court in *State v. Hess,* 279 S.C. 14, 20, 301 S.E.2d 547, 550 (1983), a case affirming the conviction of a police chief for common law misconduct in secretly meeting with a key figure in organized crime and accepting money from him.

Illinois courts have also adopted a broad view of official misconduct. In *People v. Samel,* 115 Ill.App.3d 905, 71 Ill.Dec. 738, 451 N.E.2d 892 (1983), a police officer was convicted of official misconduct for his use of a law enforcement data system to facilitate burglaries. The court stated that the phrase "lawful authority" as used in the Illinois official misconduct statute

> derives its meaning from a set of rules not contained in the official misconduct

statute, and the phrase "in excess of his lawful authority" is sufficiently definite to enable public officials and employees to determine the propriety of their actions.

*Id.* 115 Ill.App.3d at 909, 71 Ill.Dec. at 742, 451 N.E.2d at 896 (citation omitted).

The *Samel* court also stated:

> The purpose of the official misconduct statute is manifestly to compel public officials and employees, while acting in their official capacity, to do so in a lawful manner. Law, in its generic sense, is a body of rules of action or conduct prescribed by controlling authority and having binding legal force. We believe that it is in this sense that the term was used by the legislature in defining the offense of official misconduct.

*Id.* 115 Ill.App.3d at 910–11, 71 Ill.Dec. at 742, 451 N.E.2d at 896 (citations omitted). *Samel* also indicated that an indictment for misconduct could be predicated on a "*Supreme Court Rule which itself does not prescribe a penalty for its violation.*" *Id.* 115 Ill.App.3d at 911, 71 Ill.Dec. at 743, 451 N.E.2d at 897 (citations omitted).

A later Illinois appellate case, *People v. Weber,* 133 Ill.App.3d 686, 88 Ill.Dec. 769, 479 N.E.2d 382 (1985), dealt with indictments against a prosecutor for official misconduct. While affirming dismissal on grounds that the indictment did not allege an offense, the court clearly indicated that had the indictment alleged a violation of a tenet of the *Code of Professional Responsibility,* the charge would have been proper. *Id.* 133 Ill.App.3d at 689–90, 88 Ill. Dec. at 771–72, 479 N.E.2d at 384–85.

In *State v. Tronca,* 84 Wis.2d 68, 267 N.W.2d 216 (1978), a city alderman was charged with misconduct for his actions dealing with liquor licenses. In affirming the conviction, the Wisconsin Supreme Court indicated that the powers of a public official include not only those expressly conferred, but *de facto* powers arising from custom or usage which have a corrupt influence on public affairs. *Id.* 84 Wis.2d at 80, 267 N.W.2d at 221. The court con-

cluded the alderman's actions in bargaining away his discretion in exchange for dishonest consideration or advantage to some constituents were inconsistent with his official duties. *Id.* at 90, 267 N.W.2d at 226.

In a somewhat analogous situation, the Minnesota Supreme Court upheld the conviction of a *private* attorney for attorney misconduct under Minn.Stat. § 481.071 (1982) for her participation in a client's deception of the court. *State v. Casby*, 348 N.W.2d 736 (Minn.1984). The court discussed the fact that the code of professional responsibility did not excuse the attorney's conduct and stated that the attorney's conduct was also in violation of several disciplinary rules. *Id.* at 739.

Based on our decision in *State v. Andersen*, 370 N.W.2d 653 (Minn.Ct.App.1985) and the well-reasoned opinions from the courts of Illinois and New Jersey, I believe our misconduct statute, Minn.Stat. § 609.43(2), embraces conduct other than that specifically prohibited by other penal statutes. Any other interpretation would render portions of the statute meaningless and all portions of a statute must be given effect when possible. Minn.Stat. § 645.16 (1984). Logic assumes that if official misconduct encompassed conduct which was punishable as a crime only independently (e.g. bribery), there would be no need for an official misconduct provision. Prosecution of official misconduct under respondent's interpretation would be cumulative and prohibited by Minn.Stat. §§ 609.035 and 609.04 (1984).

The Minnesota Supreme Court promulgated rules governing professional conduct of attorneys under the legislative authority granted in Minn.Stat. § 480.05 (1984). The code of professional responsibility is, of course, binding on all lawyers. *In re Franke*, 345 N.W.2d 224, 228 (Minn.1984) (citing *In re Daly*, 291 Minn. 488, 490, 189 N.W.2d 176, 178–79 (1971)). Attorneys are publicly accountable for adherence to "the rule of law, canons of ethics, and standards of professional responsibility." *Daly*, 291 Minn. at 490, 189 N.W.2d at 178 (footnote omitted). Further, the disciplinary rules

define the minimum conduct below which no attorney shall fall.

Here, the City of Minneapolis adopted a specific ethics code for its city attorneys. Respondent's name appears on the cover sheet of this document. He was obviously aware of the specific provisions in the ethics code and that they applied to him as a deputy city attorney for the City of Minneapolis.

The trial court erred in ruling the indictments failed to charge an offense. The indictment here did not "simply allege that the city attorney violated the Code of Professional Responsibility and Ethics Code of the Minneapolis City Attorney." The indictment alleged that appellant, in his official capacity, "did intentionally perform acts which he knew to be in excess of his lawful authority."

As the dissent observed in *People v. La Carrubba*, 46 N.Y.2d 658, 667, 389 N.E.2d 799, 804, 416 N.Y.S.2d 203, 208 (1979):

Appellant was not indicted, nor convicted, of violating Canons 2 and 3 of the Code of Judicial Conduct in-and-of themselves, but, rather, indicted and convicted for the Penal Law crime of official misconduct. No action was taken by the District Attorney and the Grand Jury, "unaided by any legislative enactment", to convert the ethical standards set forth in the Code of Judicial Conduct into penal statutes.

If Serstock is convicted of the acts charged in the indictment, he will be convicted of the crime of Misconduct of a Public Officer in violation of Minn.Stat. § 609.43(2). The two codes define the limits of ethical conduct for city attorneys. Since Serstock is charged with notice of what the codes contain, violation of the codes is proof that he knowingly exceeded his lawful authority. The majority opinion does not differentiate, as the legislature clearly did, between public officials and private citizens. The public official is held to the standards of his office. Here, the indictments clearly allege flagrant violations of lawful authority. To hold that a prosecutor is not criminally liable for a

pattern of ticket fixing for friends to whom he owed money defies common sense.

The indictments would be valid under the above quoted rationale of *Andersen* even without reference to the code of professional responsibility or the ethics code of the Minneapolis city attorney. To paraphrase *Andersen:* What was illegal for Serstock to do in his official capacity as assistant city attorney is not so indefinite that a legitimate argument can even be made that he could have legally "dismissed, compromised, delayed or otherwise wrongfully manipulated the disposition of numerous tickets for moving violations as personal favors for (Stephen Wallack/Erwin Dauphin), to whom he was at such time indebted * * *." I believe these allegations alone are sufficient to support the indictment.

The trial court also ruled that the indictments were fatally defective and that they did not adequately apprise respondent of the charges. Minn.R.Crim.P. 17.02, subd. 2, requires that an indictment "shall contain a written statement of the essential facts constituting the offense charged." In addition, Minn.Stat. § 628.18 (1984) lists the tests for sufficiency of an indictment:

> *Tests of Sufficiency.*
>
> The indictment shall be sufficient if it is drafted in accordance with the provisions of Rule 17.02 of the rules of criminal procedure and if it can be understood therefrom:
>
> (1) That it is entitled in a court having authority to receive it, though the name of the court is not accurately stated;
>
> (2) That it was found by a grand jury of the county in which the court was held;
>
> (3) That the defendant is named, or, if his name cannot be discovered, that he is described by a fictitious name, with the statement that he has refused to discover his real name;
>
> (4) That the offense was committed at some place within the jurisdiction of the court, except where, as provided by law, the act, though done without the local jurisdiction of the county, is triable therein;

> (5) That the offense was committed at some time prior to the time of finding the indictment;
>
> (6) That the act or omission charged as the offense is clearly and distinctly set forth, in ordinary and concise language, without repetition;
>
> (7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case.

*Id.*

Minn.R.Crim.P. 17.06, subd. 1, states that "[n]o indictment * * * shall be dismissed nor shall the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matters of form which does not tend to prejudice the substantial rights of the defendant."

In addressing the adequacy of an indictment, the overall concern is whether the accused is sufficiently apprised of the charges to prepare a defense and whether there is a danger that the accused may be placed in double jeopardy. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962) (citations omitted). *See State v. Erickson*, 362 N.W.2d 398 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 1, 1985). In addition, the general principle regarding adequacy of complaints applies equally to indictments. *State v. Mancino*, 257 Minn. 580, 102 N.W.2d 504 (1960). A defendant must demonstrate prejudice. Minn.R. Civ.P. 17.06, subd. 1; *In re Welfare of TMV*, 368 N.W.2d 421 (Minn.Ct.App.1985). *See State v. Dunbar*, 296 Minn. 497, 207 N.W.2d 289 (1973).

Applying these principles, the indictments in this case are adequate. Each count recites the statutory elements, alleging the date of offense, location, respondent's official capacity, and the acts he was alleged to have performed in excess of his lawful authority in ordinary and concise language. Respondent is notified that Count I embraces misconduct for ticket fixing for Erwin Dauphin, Count II em-

braces misconduct involving ticket fixing for Stephen Wallack and Count III embraces conduct for ticket fixing for tickets issued outside the jurisdiction of the City of Minneapolis. The counts identify the Lawyer's Code of Professional Responsibility and the Ethics Code for the Minneapolis City Attorney as the source of the unlawful authority.

Respondent's argument that each ticket fixed should have been a separate offense and thus the indictment should have specified approximately 100 counts of criminal conduct is not valid. Indictments must be clear, distinct and in concise language. The indictments here charged patterns of behavior, grouping the tickets allegedly fixed in rational groups for Dauphin, Wallack and those done outside respondent's jurisdiction. The grand jury has discretion to aggregate a pattern of offenses into separate counts. Charging continuous acts over a period of time as a single offense is permitted in sexual assault prosecutions and there is no logical reason why a similar method does not apply in a multiple ticket fixing allegation. *See State v. Becker*, 351 N.W.2d 923 (Minn.1984).

Respondent is not prejudiced by the indictment because of the broad discovery available to him. Although the bill of particulars is abolished, Minn.R.Crim.P. 17.02, subd. 4, the comments to the criminal rules state: "The information supplied by a bill of particulars may be obtained by discovery under Rules 9 or 7.03." In this case the State filed an "evidence summary" listing detailed charges. Further, respondent has received the grand jury transcript, exhibits, all investigative reports and official documents.

Indictments are not intended to be as complete as complaints. If they were lengthy accounts reciting all of the evidence and all of the details, they would take on the appearance of grand jury reports, which have been criticized by our supreme court. *In re Grand Jury of Hennepin County*, 271 N.W.2d 817 (Minn. 1978); *In re Grand Jury of Wabasha County*, 309 Minn. 148, 244 N.W.2d 253

(Minn.1976). The indictments in this case were sufficient.

All three indictments against respondent should be reinstated because violation of the Lawyer's Code of Professional Responsibility may be the source of the duty giving rise to criminal charges of official misconduct under Minn.Stat. § 609.43(2). The indictments in this case were sufficient to apprise respondent of the charges and to enable respondent to withstand a potential double jeopardy infringement. I would reverse and remand for trial on all three counts.